UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

|  |  |
|---|---|
| ADIS KOVAC, ET AL.,<br><br>        Plaintiffs,<br><br>  v.<br><br>CHRISTOPHER WRAY, ET AL<br>*Director of the Federal Bureau of Investigation,*<br><br>        Defendant. | Case No. 3:18-cv-110-L |

## DEFENDANTS' MOTION TO DISMISS

Defendants hereby move to dismiss Plaintiffs' Complaint in this case under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. As set forth in the accompanying memorandum of law, the Court lacks jurisdiction over Plaintiffs' claims and none of the Plaintiffs has stated a claim for which relief can be granted. The Court should grant the Defendants' motion and dismiss this case with prejudice.

April 13, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director,
Federal Programs Branch

*/s/  Samuel M. Singer*
SAMUEL M. SINGER
D.C. Bar. No. 1014022
Trial Attorney, Federal Programs Branch
Civil Division
United States Department of Justice
20 Massachusetts Ave., NW, Room 6138
Washington, DC 20530
Tel: (202) 616-8014 | Fax: (202) 616-8470
samuel.m.singer@usdoj.gov

*Counsel for Defendant*

i

# TABLE OF CONTENTS

INTRODUCTION………………………………………………...……………………………1

STATUTORY AND REGULATORY BACKGROUND ................................................................. 2

   A.   The TSDB, the Selectee List, and the No Fly List ............................................................. 3

   B.   The Redress Process for Travelers Who Experience Delayed Boarding Allegedly Due  to TSA's Watchlist Matching Program........................................................................................................ 4

   C.   The Redress Process for U.S. Person Travelers Who Are Denied Boarding ......................................... 5

PLAINTIFFS' FACTUAL ALLEGATIONS ................................................................................ 5

ARGUMENT ................................................................................................................................ 6

   I.   This Court Lacks Jurisdiction Over Challenges to the Adequacy of DHS TRIP. ............................... 6

   II.   The No Fly List Claims Should Be Dismissed as Unripe. ...................................................... 8

   III.   All Claims Against CBP Should Be Dismissed. ........................................................... 10

   IV.   The Procedural Due Process Claims Should Be Dismissed ....................................................... 10

      a.   Travel Delays Are Not A Deprivation of the Right to Travel. ........................................... 10

      b.   The No Fly List Plaintiff Has Not Pleaded a Deprivation of the Right to Travel. .......................... 13

      c.   The Plaintiffs Have Not Pleaded a Constitutionally Protected Interest in Their Reputations. .............................................................................................................. 14

      d.   Plaintiffs Fail to Allege a "Plus" Factor ................................................................. 17

      e.   The Redress Process Is Constitutionally Adequate. ......................................................... 18

   V.   Plaintiffs' Substantive Due Process Claim Should Be Dismissed ................................................ 20

   VI.   Plaintiffs' Equal Protection Claims Should Be Dismissed. ..................................................... 24

   VII.   Plaintiffs' Non-Delegation Claims Should Be Dismissed. ...................................................... 24

   VIII.   Plaintiffs' APA Claims Should Be Dismissed ............................................................. 25

CONCLUSION .......................................................................................................................... 26

## TABLE OF AUTHORITIES

Cases

*A.L.A. Schechter Poultry Corp. v. United States,*
   295 U.S. 495 (1935)...................................................................................................................... 25

*Abbott Laboratories v. Gardner,*
   387 U.S. 136 (1967)........................................................................................................................ 8

*Al-Kidd v. Gonzales,*
   No. 05-093, 2007 WL 4391029 (D. Idaho Dec. 10, 2007) .............................................................. 20

*Americopters, LLC v. FAA,*
   441 F.3d 726 (9th Cir. 2006) ........................................................................................................... 7

*Arjmand v. DHS,*
   745 F.3d 1300 (9th Cir. 2014) ......................................................................................................... 7

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).................................................................................................................22, 24

*Bassiouni v. CIA,*
   392 F.3d 244 (7th Cir. 2004) ......................................................................................................... 20

*Bazzi v. Lynch,*
   No. 16-10123, 2016 WL 4525240 (E.D. Mich. Aug. 30, 2016),
   *aff'd on other grounds sub nom, Beydoun v. Sessions,* 871 F.3d 459 (6th Cir. 2017)...........................................*passim*

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)....................................................................................................................... 24

*Beydoun v. Lynch,*
   No. 14-cv-13812, 2016 WL 3753561 (E.D. Mich. July 14, 2016)............................................ passim

*Beydoun v. Session,*
   871 F.3d 459 (6th Cir. 2017),
   *aff'd on other grounds sub nom, Beydoun v. Sessions,* 871 F.3d 459 (6th Cir. 2017)...................................... 14, 17, 18

*Blitz v. Napolitano,*
   700 F.3d 733 (4th Cir. 2012) ........................................................................................................... 4

*Bowlby v. City of Aberdeen, Miss.,*
   681 F.3d 215 (5th Cir. 2012) ......................................................................................................... 10

*Califano v. Aznavorian,*
   439 U.S. 170 (1978)....................................................................................................................... 14

*Carroll v. United States,*
    267 U.S. 132 (1925) .................................................................................................... 16

*City of Houston v. FAA,*
    679 F.2d 1184 (5th Cir. 1982) .................................................................................... 11

*City of Los Angeles v. Patel,*
    135 S. Ct. 2443 (2015) ................................................................................................ 22

*Clancy v. Office of Foreign Assets Control of U.S. Dep't of Treasury,*
    559 F.3d 595 (7th Cir. 2009) ...................................................................................... 14

*Clapper v. Amnesty Int'l USA,*
    133 S. Ct. 1138 (2013) .................................................................................................. 9

*Cramer v. Skinner,*
    931 F.2d 1020 (5th Cir. 1991) ............................................................................. 11, 13

*Darby v. Cisneros,*
    509 U.S. 137 (1993) ...................................................................................................... 9

*Dearth v. Lynch,*
    791 F.3d 32 (D.C. Cir. 2015) ...................................................................................... 14

*Doe v. City of Lafayette,*
    377 F.3d 757 (7th Cir. 2004) ...................................................................................... 21

*Ekiu v. United States,*
    142 U.S. 651 (1892) .................................................................................................... 16

*Elec. Privacy Info. Ctr. v. DHS,*
    653 F.3d 1 (D.C. Cir. 2011) ........................................................................................ 18

*Farthing v. City of Shawnee,*
    39 F.3d 1131 (10th Cir. 1994) .................................................................................... 10

*Gilbert v. Homar,*
    520 U.S. 924 (1997) ............................................................................................. 10, 18

*Gilmore v. Gonzales,*
    435 F.3d 1125 (9th Cir. 2006) ................................................................................. 7, 13

*Green v. TSA,*
    351 F. Supp. 2d 1119 (W.D. Wash. 2005) ...................................................... 11, 14, 17

*Greenville Women's Clinic v. Bryant,*
    222 F.3d 157 (4th Cir. 2000) ...................................................................................... 22

*Haig v. Agee*,
    453 U.S. 280 (1981)................................................................................13, 14, 19, 21

*Hutchins v. District of Columbia*,
    188 F.3d 531 (D.D.C 1999) ...........................................................................21

*Ibrahim v. DHS*,
    538 F.3d 1250 (9th Cir. 2008) ..........................................................................7

*Johnson v. City of Cincinnati*,
    310 F.3d 484 (6th Cir. 2002) ..........................................................................21

*Johnson v. Martin*,
    943 F.2d 15 (7th Cir. 1991)...........................................................................15

*Jordan v. Fisher*,
    823 F.3d 805 (5th Cir. 2016) .......................................................................20, 21

*Kadura v. Lynch*,
    No. CV 14-13128, 2017 WL 914249, (E.D. Mich. Mar. 8, 2017)…………………………...…………12

*Latif v. Holder*,
    686 F.3d 1122 (9th Cir. 2012) ..........................................................................7

*Latif v. Lynch*,
    3:10-cv-00750-BR, 2016 WL 1239925 (D. Or. Mar. 28, 2016)....................................5, 8, 19

*League of United Latin Am. Citizens v. Bredesen*,
    500 F.3d 523 (6th Cir. 2007) .....................................................................11, 12, 13

*Ligon v. LaHood*,
    614 F.3d 150 (5th Cir. 2010) ........................................................................6, 7

*Love v. Pepersack*,
    47 F.3d 120 (4th Cir. 1995)............................................................................20

*Mathews v. Eldridge*,
    424 U.S. 319 (1976).....................................................................................18

*McCarthy v. Madigan*,
    503 U.S. 140 (1992).......................................................................................9

*Miller v. Reed*,
    176 F.3d 1202 (9th Cir. 1999) ..........................................................................13

*Mistretta v. United States*,
    488 U.S. 361 (1989)............................................................................................................24, 25

*Mohamed v. Holder*,
    266 F. Supp. 3d 868 (E.D. Va. 2017) .............................................................. 18, 19, 21

*Mohamed v. Holder*,
    No. 1:11-cv-50 (AJT/MSN), 2015 WL 4394958 (E.D. Va. July 16, 2015) .................19, 20

*Mokdad v. Lynch*,
    804 F.3d 807 (6th Cir. 2015) ..........................................................................................6, 8

*Morrissey v. Brewer*,
    408 U.S. 471 (1972).........................................................................................................18

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)...........................................................................................................26

*Ostergren v. Cuccinelli*,
    615 F.3d 263 (4th Cir. 2010) .............................................................................................8

*Panama Ref. Co. v. Ryan*,
    293 U.S. 388 (1935).........................................................................................................25

*Patsy v. Bd. of Regents of State of Fla.*,
    457 U.S. 496 (1982)...........................................................................................................9

*Paul v. Davis*,
    424 U.S. 693 (1976)............................................................................................14, 16, 17

*Pension Benefit Guar. Corp. v. R.A. Gray & Co.*,
    467 U.S. 717 (1984).........................................................................................................26

*Rahman v. Chertoff*,
    530 F.3d 622 (7th Cir. 2008) ...........................................................................................20

*Reg'l Mgmt. Corp. v. Legal Servs. Corp.*,
    186 F.3d 457 (4th Cir. 1999) .............................................................................................8

*Reno v. Flores*,
    507 U.S. 292 (1993).........................................................................................................21

*Reynolds v. United States*,
    132 S. Ct. 975 (2012) ......................................................................................................12

*Rucker v. Harford Cty.*,
    946 F.2d 278 (4th Cir. 1991) ...........................................................................................22

*Scherfen v. DHS,*
  No. 3:cv-08-1554, 2010 WL 456784 (M.D. Pa. Feb. 2, 2010) ................................................. 4, 12, 13

*Shearson v. Holder,*
  725 F.3d 588 (6th Cir. 2013) ..................................................................................................... 9

*Shirvinski v. U.S. Coast Guard,*
  673 F.3d 308 (4th Cir. 2012) ..................................................................................................... 14

*Siegert v. Gilley,*
  500 U.S. 226 (1991) ..................................................................................................................... 14

*Simi Inv. Co. v. Harris Cnty., Texas,*
  236 F.3d 240 (5th Cir. 2000) ..................................................................................................... 20

*Speet v. Schuette,*
  726 F.3d 867 (6th Cir. 2013) ..................................................................................................... 23

*Sylvia Dev. Corp. v. Calvert Cty.,*
  48 F.3d 810 (4th Cir. 1995) ....................................................................................................... 24

*Tabbaa v. Chertoff,*
  509 F.3d 89 (2d Cir. 2007) ..................................................................................................... 3, 12

*Tarhuni v. Holder,*
  8 F. Supp. 3d 1253 (D. Or. 2014) .......................................................................................... 15, 1

*Tooley v. Bush,*
  No. 06-306, 2006 WL 3783142 (D.D.C. Dec. 21, 2006),
  *aff'd, Tooley v. Napolitano,* 586 F.3d 1006 (D.C. Cir. 2009) ............................................... 20

*Torraco v. Port Auth.,*
  615 F.3d 129 (2d Cir. 2010) ..................................................................................................... 12

*Touby v. United States,*
  500 U.S. 160 (1991) ..................................................................................................................... 24

*Town of Southold v. Town of E. Hampton,*
  477 F.3d 38 (2d Cir. 2007) ................................................................................................. 11, 13,

*United States v. Aleman-Figuereo,*
  117 F. App'x 208 (3d Cir. 2004) ............................................................................................. 13

*United States v. Bredimus,*
  352 F.3d 200 (5th Cir. 2003) ..................................................................................................... 21

*United States v. Flores-Montano,*
  541 U.S. 149 (2004) ................................................................................................ 10, 12, 16

*United States v. Hartwell,*
  436 F.3d 174 (3d Cir. 2006) .......................................................................................... 15

*United States v. Montoya de Hernandez,*
  473 U.S. 531 (1985) ....................................................................................................... 12

*United States v. Ramsey,*
  431 U.S. 606 (1977) ....................................................................................................... 16

*United States v. Salerno,*
  481 U.S. 739 (1987) ....................................................................................................... 22

*United States v. Shenandoah,*
  595 F.3d 151 (3d Cir. 2010) .......................................................................................... 11

*United States v. Skipwith,*
  482 F.2d 1272 (5th Cir. 1973) ................................................................................... 15, 16

*United States v. Wehrli,*
  637 F.2d 408 (5th Cir. 1981) .................................................................................... 15, 16

*Van Atta v. Def. Intelligence Agency,*
  No. 87-1508, 1988 WL 73856 (D.D.C. July 6, 1988) ...................................................... 15

*Washington v. Glucksberg,*
  521 U.S. 702 (1997) ....................................................................................................... 21

*Whitman v. Am. Trucking Ass'ns,*
  531 U.S. 457 (2001) ....................................................................................................... 25

*Wilkinson v. Austin,*
  545 U.S. 209 (2005) ....................................................................................................... 19

*Williams v. Bramer,*
  180 F.3d 699 (5th Cir. 1999) .......................................................................................... 24

*Wright v. Hollingsworth,*
  260 F.3d 357 (5th Cir. 2008) ........................................................................................... 8

*Zinermon v. Burch,*
  494 U.S. 113 (1990) ....................................................................................................... 19

Statutes

5 U.S.C. § 706 ................................................................................................................ 25

6 U.S.C. § 111 .................................................................................................................. 2

6 U.S.C. § 202 .................................................................................................................. 2

19 U.S.C. § 482 ................................................................................................................ 3

19 U.S.C. § 1455 .............................................................................................................. 3

19 U.S.C. § 1459 .............................................................................................................. 3

19 U.S.C. § 1461 .............................................................................................................. 3

19 U.S.C. § 1467 .............................................................................................................. 3

19 U.S.C. § 1499 .............................................................................................................. 3

19 U.S.C. § 1581 .............................................................................................................. 3

19 U.S.C. § 1582 .............................................................................................................. 3

28 U.S.C. § 533 ................................................................................................................ 3

49 U.S.C. § 114 ......................................................................................................... *passim*

49 U.S.C. § 44903 ......................................................................................................... 3, 4

49 U.S.C. § 44904 ........................................................................................................... 25

49 U.S.C. § 44926 ............................................................................................................ 4

49 U.S.C. § 46110 .................................................................................................. 1, 5, 6 , 7

Regulations

28 C.F.R. § 0.85(l) ............................................................................................................ 3

49 C.F.R. § 1520.5 ........................................................................................................... 4

49 C.F.R. Pt. 1560 ........................................................................................................... 4

49 C.F.R. § 1560.1 ........................................................................................................... 4

49 C.F.R. § 1560.101 ....................................................................................................... 4

49 C.F.R. § 1560.105 ................................................................................................... 3, 4, 9

49 C.F.R. § 1560.201 ................................................................................................................ 4

49 C.F.R. § 1560.205 ............................................................................................................ 4, 5

Other Authorities

Secure Flight Program,
    73 Fed. Reg. 64018 (Oct. 8, 2008) ................................................................................ 12

13B Charles A. Wright & Arthur R. Miller,
    *Fed. Practice & Proc.* § 3532.6 (3d ed. 2004) ……………………………………...…......8

Homeland Security Presidential Directive 6 (Sept. 16, 2003),
    https://fas.org/irp/offdocs/nspd/hspd-6.html................................................................3

Safeguarding Privacy and Civil Liberties While Keeping Our Skies Safe: Hearing Before the H. Comm. on
Homeland Security, 113th Cong. 1-2 (2014)
    (statement of Christopher M. Piehota, Director,TSC/FBI)…………………………………3, 5, 19

**INTRODUCTION**

Congress tasked the Transportation Security Administration ("TSA") with establishing policies and procedures to identify individuals who pose a threat to civil aviation or national security. To this end, TSA relies upon the No Fly List and Selectee List—subsets of the Consolidated Terrorist Screening Database ("TSDB") maintained by the Terrorist Screening Center ("TSC")—to screen passengers attempting to fly on United States commercial aircraft, or any commercial flight to, from, or over the United States. As Congress directed, TSA has in place procedures that allow individuals to seek redress for delayed or denied boarding resulting from TSA's screening program by filing an inquiry with Department of Homeland Security's Travel Redress Inquiry Program ("DHS TRIP").

Plaintiffs are five U.S. citizens who allege they are in the TSDB. Four Plaintiffs allege that they are on the Selectee List and, as a result, that they have been subject to additional screening or inspection by TSA or U.S. Customs and Border Protection ("CBP") when they have attempted to leave and reenter the United States on commercial flights (hereafter the "Screening Plaintiffs"). The remaining Plaintiff alleges he is on the No Fly List and has been denied boarding on commercial flights (hereinafter the "No Fly List Plaintiff"). Each Plaintiff raises five claims challenging his or her purported watchlist placement and the adequacy of the DHS TRIP process. None has merit.

As a threshold matter, this Court lacks jurisdiction over these claims because challenges to the adequacy of DHS TRIP must be brought in the Court of Appeals. All of the Plaintiffs have filed a redress request to challenge their purported placement on the watchlist. The DHS TRIP process was devised and applied to each of the Plaintiffs by TSA, and a challenge to the adequacy or application of that process is a challenge to an order of TSA, which, under 49 U.S.C. § 46110, must be brought in the Court of Appeals.

Even if this Court has jurisdiction, the Plaintiffs have not stated claims for relief under the due process clause. The Screening Plaintiffs have not alleged a deprivation of a liberty interest protected by the Fifth Amendment. Whatever interest these individuals have in delay-free travel, it is not of constitutional magnitude, and courts repeatedly have recognized that inconvenience and delay experienced by travelers, like those

alleged here, do not infringe the right to travel. Nor do the Plaintiffs' allegations of reputational harm satisfy the elements of a "stigma-plus" claim; the Plaintiffs cannot show that the Government has publicly labeled them as suspected terrorists, or that they have suffered concrete harm as a result of the purported stigma.

The No Fly List Plaintiff also fails to state a procedural due process claim. The Government's revised redress process has withstood due process challenges, with two courts recognizing the process as constitutionally sufficient. More immediately, however, the No Fly List Plaintiff has not completed the DHS TRIP process and cannot state a due process claim until he pursues it to completion.

None of the Plaintiffs have viable substantive due process claims. The asserted liberty interests—not the interest in traveling by plane, and certainly not the interest in delay-free travel—cannot be likened to a "fundamental" right. And even if they could, Plaintiffs still would have to show that the Government's reasons for the deprivation fail to survive scrutiny. None of the Plaintiffs' allegations on this score cast doubt on the Government's compelling interest in using the TSDB as a preventive counterterrorism tool. Finally, as set forth below, Plaintiffs' equal protection, non-delegation, and APA claims also uniformly lack merit and should be dismissed.

## STATUTORY AND REGULATORY BACKGROUND

Several components of the Government work in concert to secure the United States and its aviation system from terrorist threats. DHS is charged with "prevent[ing] terrorist attacks within the United States," 6 U.S.C. § 111(b)(1)(A), and "reduc[ing] the vulnerability of the United States to terrorism," *id.* § 111(b)(1)(B); *see also id.* § 202(1). Within DHS, TSA is responsible for securing all modes of transportation, with a focus on preventing terrorist attacks against civil aviation and other methods of transportation. *See* 49 U.S.C. § 114(d). TSA is responsible for the day-to-day federal security screening operations for passenger air transportation, *id.* § 114(e)(1), and for developing "policies, strategies, and plans for dealing with threats to transportation security," *id.* § 114(f)(3). Congress directed TSA to establish procedures for notifying appropriate officials "of the identity of individuals" who are "known to pose, or suspected of posing, a risk of air piracy or terrorism or a threat to airline or passenger safety." 49 U.S.C. § 114(h)(2). This mandate requires TSA, "in consultation with other appropriate Federal agencies and air carriers," *id.* § 114(h)(3), "to use information from government

2

agencies to identify [travelers] who may be a threat to civil aviation or national security," *id.* § 114(h)(3)(A), and to "prevent [those] individual[s] from boarding an aircraft, or take other appropriate action with respect to that individual," *id.* § 114(h)(3)(B). *See also id.* § 114(h)(1). TSA may "issue . . . such regulations as are necessary to carry out [its] functions," *id.* § 114(l)(1), as well as "prescribe regulations to protect passengers and property on an aircraft," *id.* §44903(b). The Federal Bureau of Investigation (FBI) investigates and analyzes intelligence relating to both domestic and international terrorist activities, *see* 28 U.S.C. § 533, 28 C.F.R. § 0.85(l), and administers TSC,[1] which provides information to TSA for airline passenger screening.

Also within DHS, CBP has authority to inspect all those who are entering the United States. CBP exercises authority under numerous statutes to stop, search, and examine persons at international borders. *See, e.g.,* 19 U.S.C. §§ 482, 1455, 1459, 1461, 1467, 1499, 1581, 1582. These authorities include, but are not limited to, inspections for the purpose of preventing terrorist attacks. *See Tabbaa v. Chertoff*, 509 F.3d 89, 97 (2d Cir. 2007).

## A.      The TSDB, the Selectee List, and the No Fly List

One of TSA's primary responsibilities is ensuring aircraft security, including by implementing the No Fly and Selectee Lists, subsets of the TSDB. More specifically, TSA must "perform[] . . . the passenger prescreening function of comparing passenger information to the automatic selectee and no fly lists and utilize all appropriate records in the consolidated and integrated terrorist watchlist maintained by the Federal Government in performing that function." 49 U.S.C. § 44903(j)(2)(C)(ii). The TSDB is a consolidated database containing identifying information of persons known or reasonably suspected to be terrorists. Safeguarding Privacy and Civil Liberties While Keeping Our Skies Safe: Hearing Before the H. Comm. on Homeland Security, 113th Cong. 1-2 (2014) (statement of Christopher M. Piehota, Director, TSC/FBI) ("Piehota Statement"). Individuals on the No Fly List are denied boarding, and individuals on the Selectee List may enter the sterile area of an airport or board an aircraft only after undergoing enhanced security screening. *See* 49 C.F.R. § 1560.105(b)(2), (b)(7)(iii).

---

[1] TSC, established by Executive Order in 2003, is a multi-agency Executive organization created to "consolidate the Government's approach to terrorism screening and provide for the appropriate and lawful use of Terrorist Information in screening processes." Homeland Security Presidential Directive 6 (Sept. 16, 2003), https://fas.org/irp/offdocs/nspd/hspd-6.html.

TSA carries out these responsibilities through the "Secure Flight" program. *See* 49 C.F.R. Pt. 1560. Under Secure Flight, covered aircraft operators request the full name, gender, date of birth, and other information from passengers, and submit the data to TSA. *Id.* § 1560.101(a)(1), (b). TSA uses the information to detect individuals "on Federal government watchlists who seek to travel by air." *Id.* § 1560.1(b). An aircraft operator may not issue a boarding pass to an individual "until TSA informs the covered aircraft operator of the results of watchlist matching for that passenger," and, if TSA so directs, the aircraft operator "may issue a boarding pass to that individual [but] must identify the individual for enhanced screening, in accordance with procedures approved by TSA." *Id.* § 1560.105(b)(2).

As a general matter, subject to certain exceptions, the Government does not disclose the status of any individual with respect to the TSDB, the Selectee List, or the No Fly List. Watchlist status is protected by the law enforcement privilege, and information used by TSA's Secure Flight Program, such as the No Fly List and Selectee List, are statutorily protected as Sensitive Security Information ("SSI"). 49 U.S.C. § 114(r); *see, e.g., Blitz v. Napolitano*, 700 F.3d 733, 737 n.5 (4th Cir. 2012); *Scherfen v. DHS*, 2010 WL 456784, at *8 n.5 (M.D. Pa. Feb. 2, 2010); *see also* 49 C.F.R. § 1520.5(b)(9)(ii).

**B.      The Redress Process for Travelers Who Experience Delayed Boarding Allegedly Due to TSA's Watchlist Matching Program**

Congress directed TSA to "establish a procedure to enable airline passengers, who are delayed or prohibited from boarding a flight because the advanced passenger prescreening system determined that they might pose a security threat, to appeal such determination and correct information contained in the system." 49 U.S.C. § 44903(j)(2)(C)(iii)(I); *see also id.* §§ 44903(j)(2)(G)(i), 44926(a). Under these authorities, TSA established and administers DHS TRIP, through which travelers may request the correction of any erroneous information if they allege, as relevant here, that they have been unfairly or incorrectly delayed or prohibited boarding on an aircraft as a result of TSA's watchlist matching program. 49 C.F.R. §§ 1560.201, 1560.205. TSA has promulgated regulations governing the DHS TRIP process. 49 C.F.R. §§ 1560.201-1560.207. Under these regulations, travelers may initiate this redress process by submitting a redress inquiry form. *Id.* § 1560.205(b). If the traveler's name is a match or near match with a name on the watchlist, "TSA, in

4

coordination with the TSC and other appropriate Federal law enforcement or intelligence agencies, if necessary, will review all the documentation and information requested from the individual, correct any erroneous information, and provide the individual with a timely written response." *Id.* § 1560.205(d). This includes research and review of information on the watchlist and on related U.S. government information systems. *See* Piehota Statement.

Following review, DHS TRIP responds with a determination letter. *See* Piehota Statement. These letters vary, depending on the circumstances, but generally advise the traveler about any corrections that may have been made as a result of the redress inquiry and DHS TRIP's review. For redress inquiries alleging delayed or denied boarding due to TSA watchlist matching, the determination letter also typically states that it is a "final agency decision, which is reviewable by the United States Court of Appeals under 49 U.S.C. § 46110." *Id.*

**C.     The Redress Process for U.S. Person Travelers Who Are Denied Boarding**

DHS TRIP provides additional procedures for U.S. persons who purchase a ticket, are denied boarding on flights, and file a redress petition alleging that they were improperly denied boarding. *See generally Latif v. Lynch*, 2016 WL 1239925, at *5 (D. Or. Mar. 28, 2016) (describing revised redress procedures as applied to plaintiffs claiming to be on the No Fly List). Upon submitting a proper redress petition, if such individuals are determined to be appropriately on the No Fly List, DHS TRIP will inform them that they are on the No Fly List. They then are offered an opportunity to seek additional information about the basis for their listing. The travelers are then provided with the criterion and a summary of the factual basis for the No Fly List determination, to the extent possible consistent with national security and law enforcement interests. *See id.* The travelers have an opportunity to respond to this information, and the TSA Administrator conducts his own review of the information available regarding the traveler's placement on the No Fly List, including the information submitted by the travelers, before he issues a final determination as to whether to maintain the traveler on or remove the traveler from the No Fly List. *See id.*

## PLAINTIFFS' FACTUAL ALLEGATIONS

The Plaintiffs allege that they are each on a terrorist watchlist, and that they have been selected for additional screening at airports or additional inspection at ports of entry into the United States. The Plaintiffs

allege that they were not given notice or an opportunity to respond to their watchlist placement, that they remain on the watchlist today, and that their nominations to the watchlist were based solely on a "hunch" (or some combination of their race, ethnicity, national origin, religious affiliation, and First Amendment-protected activities). They further allege that their watchlist status is widely "disseminated" to public and private entities. *See* Compl. ¶¶ 29-120. Each Plaintiff also makes individual allegations about their travel difficulties and other encounters with government officials they believe to be connected to their alleged watchlist status. Four of the five plaintiffs (Bashar Aljame, Abraham Sbyti, Suhaib Allababidi, Fadumo Warsame) allege they are on the Selectee List and subject to additional screening or inspection. One plaintiff (Adis Kovac) alleges that he is on the No Fly List and has been denied boarding on several commercial flights. Compl. ¶¶ 121-27.

## ARGUMENT

### I.    This Court Lacks Jurisdiction Over Challenges to the Adequacy of DHS TRIP.

Challenges to the adequacy of DHS TRIP must be brought in the Court of Appeals under 49 U.S.C. § 46110. *See Mokdad v. Lynch*, 804 F.3d 807 (6th Cir. 2015). Section 46110 provides for "exclusive" jurisdiction in the courts of appeal to review orders issued "in whole or in part" by TSA. The Fifth Circuit has given "expansive construction" to the term "order" in § 46110. *Ligon v. LaHood*, 614 F.3d 150, 154 (5th Cir. 2010). As the Sixth Circuit recently recognized, "Congress has specifically directed" TSA to establish a redress process, and "TSA has issued regulations carrying out its responsibilities." *Mokdad*, 804 F.3d at 811. It follows, the court explained, that to the extent the plaintiff "challenges the adequacy of the redress process, his claims amount to a challenge to a TSA order." *Id.*; *see also Beydoun v. Lynch*, 2016 WL 3753561, at *3-4 (E.D. Mich. July 14, 2016) (dismissing alleged Selectee's claims for failure to join TSA as a necessary party because the complaint essentially challenged DHS TRIP); *Bazzi v. Lynch*, 2016 WL 4525240, at *3-5 (E.D. Mich. Aug. 30, 2016) (same); *both aff'd on other grounds sub nom, Beydoun v. Sessions*, 871 F.3d 459 (6th Cir. 2017).[2]

---

[2] The *Mokdad* court separately held that a challenge to a separate No Fly List determination by TSC could be brought in district court because it was not inextricably intertwined with the TSA order. *See* 804 F.3d at 812-15. While the government disagrees with that aspect of the *Mokdad* decision, the Sixth Circuit nonetheless recognized that a challenge to DHS TRIP redress procedures would be a separate challenge to a TSA order subject to review under Section 46110. *Id.* at 811.

To the extent the Plaintiffs challenge the adequacy of the DHS TRIP procedures available to travelers who believe they are on a watchlist, they challenge an order of TSA. The Complaint specifically alleges the "[i]nadequacy of the DHS [TRIP] [p]rocess," Compl. ¶ 108 *et seq.*, and Counts I and III challenge the constitutional adequacy of the procedures. Further, the Prayer for Relief seeks an order requiring Defendants "to provide individuals designated on the federal terror watch list with a legal mechanism that affords them notice of the reasons and bases for their placement on the federal terror watch list and a meaningful opportunity to contest their continued inclusion on the federal terror watch list." *Id.* at 50. This function has been specifically assigned by Congress to TSA. Plaintiffs, therefore, are challenging an order of TSA.

Some watchlisting claims challenging DHS TRIP procedures have been allowed to proceed in district court. *See Latif v. Holder*, 686 F.3d 1122, 1127 (9th Cir. 2012); *Arjmand v. DHS*, 745 F.3d 1300 (9th Cir. 2014); *Ibrahim v. DHS*, 538 F.3d 1250, 1255 (9th Cir. 2008). Under the prior DHS TRIP process, for example, the Ninth Circuit reasoned in *Latif* that any "relief must come from TSC—the sole entity with both the classified intelligence information Plaintiffs want and the authority to remove them from the List." 686 F.3d at 1128.

However, as the Sixth Circuit has recognized, the question presented by Section 46110 is not whether *all* claims related to the watchlisting process are channeled to the courts of appeal; the question is whether a challenge is directed at a TSA order. Said another way, in assessing a procedural due process claim in the watchlisting context, a court asks whether the challenged procedures are adequate, not which agency would provide relief from the underlying listing. The question of remedy would be reached only if the TSA procedures are inadequate, and as to that question a TSA order is at issue and Section 46110 applies.

Further, *all* claims inescapably intertwined with orders that fall within Section 46110 are subject to the statute's channeling effect, including claims against TSC for alleged placement in the TSDB. *See Americopters, LLC v. FAA*, 441 F.3d 726, 736 (9th Cir. 2006); *Gilmore v. Gonzales¸* 435 F.3d 1125, 1132 (9th Cir. 2006); *see also Ligon v. LaHood*, 614 F.3d 150, 154-57 (5th Cir. 2010) (discussing the "inescapably intertwined" doctrine and collecting cases). As a result, all of the Plaintiffs' claims are subject to the channeling statute. But at a minimum, any challenges to TSA-provided procedures must be heard in the Court of Appeals. *Mokdad*, 804 F.3d at 811.

7

**II.     The No Fly List Claims Should Be Dismissed as Unripe.**

Until Mr. Kovac exhausts the congressionally mandated administrative redress process, his challenge to his alleged placement on the No Fly List is premature. *See Latif v. Lynch*, No. 3:10-CV-00750-BR, 2016 WL 1239925, at *5 (D. Or. Mar. 28, 2016) (upholding revised redress procedures as applied to U.S. persons on the No Fly List); *see also* 13B Charles A. Wright & Arthur R. Miller, *Fed. Practice & Proc.* § 3532.6 (3d ed. 2004) ("[R]ipeness may be used to express the exhaustion principle that administrative remedies should be tried before running to the courts."). The ripeness doctrine prevents the court, "through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies," while also protecting "agencies from judicial interference until an administrative decision has been formalized." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49 (1967). A case is not ripe when "problems such as the inadequacy of the record … or ambiguity in the record … will make a case unfit for adjudication on the merits." *Ostergren v. Cuccinelli*, 615 F.3d 263, 288 (4th Cir. 2010) (citation omitted); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2008) (dismissing complaint for failure to exhaust where plaintiff only filed a first step grievance but "did not pursue the grievance remedy to conclusion"); *Reg'l Mgmt. Corp. v. Legal Servs. Corp.*, 186 F.3d 457, 465 (4th Cir. 1999) (considering the agency's interest in "crystallizing its policy before that policy is subject to review" and the court's interest in "avoiding unnecessary adjudication and in deciding issues in a concrete setting."). By ordering the Government to let Mr. Kovac board a flight, without requiring him to complete the congressionally mandated redress process, the Court would be overruling the Executive Branch's national security decision-making and doing so without the benefit of an administrative record reflecting the agency's expert assessment.

In addition to ripeness, courts may require exhaustion as a prudential matter before a plaintiff can seek judicial review. *See Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 501 (1982). When "Congress has not clearly required exhaustion, sound judicial discretion governs" whether exhaustion is appropriate. *McCarthy v. Madigan*, 503 U.S. 140, 144–45 (1992) ("The exhaustion doctrine also acknowledges the commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court."). Applying these principles, the Sixth Circuit

dismissed the claims of a traveler who failed to exhaust her remedies through DHS. *See Shearson v. Holder,* 725 F.3d 588, 593–95 (6th Cir. 2013). The Sixth Circuit reasoned that an exhaustion requirement in this context promotes judicial efficiency, encourages administrative accuracy, and creates an administrative record. *See id.* at 594–95. Other courts have required plaintiffs to complete the revised DHS TRIP procedures before conducting judicial review of No Fly List claims. *See Mokdad v. Holder*, No. 13-cv-12038, Order, Dkt. 43, (E.D. Mich. Dec. 16, 2015) (Roberts, D.J.) (notably, the DHS TRIP process revealed that Plaintiff was not on the List, and the case was therefore moot); *see also Latif,* No. 3:10-cv 750-BR, Dkt. No. 152 (D. Or. Oct. 3, 2014); *Fikre v. FBI*, No. 13-cv-899, Dkt. 57 (D. Or. Jan. 15, 2015); *Tarhuni v. Holder*, No. 13-cv-001, Dkt. 79, 86 (D. Or. Oct. 3, 2014). The same approach should be followed here.

### III.    All Claims Against CBP Should Be Dismissed.

The Plaintiffs have failed to state a viable claim against CBP. Although they have named CBP as a defendant and described various encounters with CBP officers, it is difficult to discern from the face of the Complaint how Plaintiffs claim CBP broke the law. Nowhere do the Plaintiffs allege that CBP exceeded its authority or took any improper action against them. And while the Complaint contains some limited allegations about CBP's conduct during border inspections, it does not challenge CBP's authority to do so or seek any relief against CBP. "The Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border," *United States v. Flores-Montano*, 541 U.S. 149, 152-53 (2004), and CBP has extraordinarily broad authority to conduct border searches, *id.* ("[S]earches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border."). Here, all of the claims for relief appear to hinge on the notion that watchlisting itself is somehow illegal. But even if that theory were viable, the Complaint contains no allegation that CBP played any part in the Plaintiffs' alleged watchlisting. The claims against CBP must fail.

### IV.    The Procedural Due Process Claims Should Be Dismissed.

"Procedural due process considers not the justice of a deprivation, but only the means by which the deprivation was effected." *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 222 (5th Cir. 2012). To state a claim,

the plaintiffs must show "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). "[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). Instead, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.*

### a. Travel Delays Are Not A Deprivation of the Right to Travel.

The Screening Plaintiffs have not pleaded a deprivation of the right to travel. Each Plaintiff alleges that he or she is on a watchlist and, as a result, has been subject to a variety of delays, searches, or inconveniences when traveling by air or entering in the United States. They further allege that they have a "liberty interest in traveling free from unreasonable burdens that are not reasonably tailored within, to, and from the United States, through land border crossings and over U.S. air space." Compl. ¶ 252. Even assuming these allegations were true, they do not show a deprivation of the right to travel.

Multiple courts have held that the right to travel is not implicated by travel delays and inconveniences akin to those alleged here. *See Cramer v. Skinner*, 931 F.2d 1020, 1031 (5th Cir. 1991) (finding no violation of the right to travel where a statutory restriction on airline service "makes travel less convenient" but "does not bar travelers" from using the airport); *United States v. Shenandoah*, 595 F.3d 151, 162-63 (3d Cir. 2010) (finding that the right to travel is not offended by a law causing some inconvenience), *abrogated on other grounds by Reynolds v. United States*, 132 S. Ct. 975 (2012); *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 535 (6th Cir. 2007) (explaining that a law causing "inconvenience" for the traveler does not amount to a constitutional "denial of the right to travel")*; see also Green v. TSA*, 351 F. Supp. 2d 1119, 1130 (W.D. Wash. 2005) (holding in the context of a challenge to enhanced security screening that "Plaintiffs do not have a right to travel without any impediments whatsoever"). In *Beydoun*, the plaintiff claimed to be on the Selectee List, and the district court specifically rejected the argument that allegations of delay, harassment, and humiliation were sufficient to state a deprivation of the right to travel. *See* 2016 WL 3753561, at *5; *Bazzi*, 2016 WL 4525240,

at *5-8 (adopting *Beydoun* court's reasoning that alleged Selectee List placement did not identify a cognizable liberty interest).

Even in the context of interstate travel, the courts have held that travel delays ranging from a few hours up to one day do not unconstitutionally burden the right to travel. *See, e.g., City of Houston v. FAA*, 679 F.2d 1184, 1186-99 (5th Cir. 1982) (upholding regulation limiting use of airport so that certain passengers must use connecting flights or land at a more distant airport); *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 51 (2d Cir. 2007) (upholding law banning certain ferry travel to an island thereby making interstate travel "longer and more expensive"); *Torraco v. Port Auth.*, 615 F.3d 129, 141 (2d Cir. 2010) (holding that a delay of "a little over one day . . . was a minor restriction that did not result in a denial of the right to travel").

The Screening Plaintiffs allege they have been subjected to enhanced security measures prior to boarding commercial flights originating in the United States, or inspection at the border when travelling internationally. Unlike the alleged No Fly List Plaintiff, these Plaintiffs do not allege that they have been prevented from traveling domestically or internationally through any action of Defendants. As the *Beydoun* court noted, plaintiffs claiming to be on the Selectee List "can still fly after additional screening." *Beydoun*, 2016 WL 3753561, at *5; *Bazzi*, 2016 WL 4525240 at *6-7; *Kadura v. Lynch*, No. CV 14-13128, 2017 WL 914249, at *7 (E.D. Mich. Mar. 8, 2017). Inconvenience, inspections, or delays at the airport or at the border, like those described by Screening Plaintiffs, do not amount to a constitutionally cognizable violation of the right to travel. *See, e.g., League of United Latin Am. Citizens*, 500 F.3d at 535; *Beydoun*, 2016 WL 3753561, at *5; *Bazzi*, 2016 WL 4525240 at *6-7; *see also Scherfen v. DHS*, No. 3:CV-08-1554, 2010 WL 456784, at *7 (M.D. Pa. Feb. 2, 2010) (noting, "heightened screening at airports and border crossing points does not necessarily signify inclusion" on a watchlist, as "[t]ravelers may be pulled out of line, searched, and questioned for a variety of reasons, unrelated to watch lists."); 73 Fed. Reg. 64,018, 64,025 (Oct. 8, 2008) ("standard passenger and baggage screening . . . may include additional, random screening"); *id.* at 64,026 ("[Passengers who are not on the Selectee List] will not always avoid enhanced screening.").

To the extent the Screening Plaintiffs are challenging delays at the border, the Supreme Court has held that "delays of one to two hours at international borders are to be expected," *Flores-Montano*, 541 U.S. at 155

n.3, and other courts of appeal have found detentions at the border of four to six hours to be constitutional, *Tabbaa*, 509 F.3d at 100-01. As explained, a law causing "inconvenience" for the traveler, including delays at the border, does not amount to a constitutional "denial of the right to travel." *League of United Latin Am. Citizens*, 500 F.3d at 535. Moreover, the Screening Plaintiffs' allegations about border searches do not support a plausible inference of illegal government action.[3]

At the end of the day, the Screening Plaintiffs bear the burden of alleging the deprivation of a liberty interest in travel. They allege no such deprivation. By their own account, they routinely are able to fly and have done so numerous times since they first experienced travel difficulties. What they allege, rather than a deprivation, is delay resulting from additional screening and inspection. But however regular or predictable those delays may be, they do not constitute a deprivation of a protected liberty interest in travel. *Beydoun*, 2016 WL 3753561, at *5; *Bazzi*, 2016 WL 4525240, at *6-7.[4]

### b. The No Fly List Plaintiff Has Not Pleaded a Deprivation of the Right to Travel.

Mr. Kovac also has not alleged a deprivation of the right to travel by virtue of being denied boarding. As an initial matter, the Second, Fifth, and Ninth Circuits have determined that a traveler does not have a constitutional right to the most convenient form of travel, such as traveling by airplane as opposed to car. *See Town of Southold*, 477 F.3d at 54 (holding that there is no constitutional right to the most convenient form of travel); *Gilmore*, 435 F.3d at 1137 (holding that there is no "right to travel by airplane"); *Miller v. Reed*, 176 F.3d 1202, 1205 (9th Cir. 1999) (holding there is no "right to drive" and that "burdens on a single mode of

---

[3] The Government has the well-established authority to perform border searches without warrant, probable cause, or reasonable suspicion. *See United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985). There is "a narrow exception to customs officials' broad authority . . . for searches that are highly intrusive and pose serious threats to the dignity and privacy interests of the person being searched." *United States v. Aleman-Figuereo*, 117 F. App'x 208, 211 (3d Cir. 2004) (citing cases). Plaintiffs have not alleged any searches approaching this standard.

[4] The district court's opinion in *Elhady v. Piehota*, which permitted Selectee List claims to survive a Rule 12 motion, is incorrect in multiple respects. 16-cv-375, Dkt. 47 (E.D. Va. Sept. 5, 2017) (Exhibit 5 to Complaint). While the court concluded that the plaintiffs "adequately alleged a procedurally protected liberty interest," *id.* at 12, the existence of a protected interest in travel is not the question; the question is whether that interest has been *deprived*. And on that question, the court concluded that additional airport screening is "liberty-constraining," and suggested that the plaintiffs were subjectively "deterred from traveling" due to the delays they had experienced. *Id.* at 12-13. But that is not the standard either; mere deterrence is not deprivation, as several other decisions cited above have recognized. In any event, the court in *Elhady* has not yet finally resolved these issues.

transportation do not implicate the right to interstate travel"); *Cramer v. Skinner*, 931 F.2d 1020, 1031 (5th Cir. 1991) (holding that "travelers do not have a constitutional right to the most convenient form of travel").

Moreover, the ability to travel by plane is only a limited aspect of an individual's liberty interest in international travel. The Supreme Court has held that "the *freedom* to travel outside the United States must be distinguished from the *right* to travel within the United States." *Haig v. Agee*, 453 U.S. 280, 306 (1981). The freedom to travel internationally is "no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment," and is "subordinate to national security . . . consideration." *Id.* at 306-07; *Califano v. Aznavorian*, 439 U.S. 170, 176-77 (1978) (Government action that infringes the right to travel abroad will be upheld unless it is "wholly irrational."); *see also Clancy v. Office of Foreign Assets Control of U.S. Dep't of Treasury*, 559 F.3d 595, 604 (7th Cir. 2009) ("The Supreme Court affords great deference to restrictions on international travel so long as they are justified by a rational foreign policy consideration.") (internal citations omitted); *Dearth v. Lynch*, 791 F.3d 32, 38 n.1 (D.C. Cir. 2015) (claimed violation of right to international travel "trigger[s] nothing more than rational-basis scrutiny"). Accordingly, Plaintiffs have not identified a liberty interest sufficient to support their "right to travel" claim.

### c. The Plaintiffs Have Not Pleaded a Constitutionally Protected Interest in Their Reputations.

In addition to a deprivation of the "right to travel", Plaintiffs allege an infringement of their "right to be free from false government stigmatization as individuals who are known or suspected to be terrorists." *See* Compl. ¶ 253. Because "injury to reputation by itself [is] not a 'liberty' interest protected under the [Due Process Clause]," *Siegert v. Gilley*, 500 U.S. 226, 233 (1991), the Supreme Court has formulated a standard, known as the "stigma-plus" test, to determine whether alleged reputational harm infringes a liberty interest. *See Paul v. Davis*, 424 U.S. 693, 711 (1976); *Shirvinski*, 673 F.3d at 315. Under this test, plaintiffs alleging reputational harm to demonstrate: (1) they suffered a stigma from governmental action; plus (2) they experienced an alteration or extinguishment of "a right or status previously recognized by state law." *Paul*, 424 U.S. at 711; *see also Beydoun,* 2016 WL 3753561, at *5 (rejecting stigma-plus claim in the context of a challenge to alleged watchlist status because plaintiff failed to allege that he was deprived of a right previously

13

held under the law); *Bazzi*, 2016 WL 4525240, at *7 (same), *Green*, 351 F. Supp. 2d at 1129-30 (rejecting a stigma-plus claim in the context of a challenge to enhanced security screening). Like the plaintiffs subjected to enhanced screening in *Beydoun*, *Bazzi*, and *Green*, all Plaintiffs here fail to adequately allege either of the elements of a stigma-plus claim.

To begin, Plaintiffs' claims fail because they do not allege facts showing public stigmatization. Plaintiffs have not alleged that TSA has disclosed to the general public their purported placement on a watchlist, let alone claimed that the Government has otherwise publicly labeled them, as they assert, "individuals who are 'known or suspected to be' terrorists, or who are otherwise associated with terrorist activity[.]" *See* Compl. ¶ 253. In fact, as Plaintiffs concede, government policy provides that an individual's status with respect to the TSDB or Selectee List cannot be disclosed to the individual, let alone the general public and, as discussed above, the Government affirmatively prohibits disclosure of status because it is protected as SSI and law enforcement sensitive information. While Plaintiffs claim (without any apparent basis) that Defendants have revealed their alleged TSDB status to certain third party stakeholders—*e.g.*, "state and local authorities," "foreign governments," "gun sellers," the captains of sea-faring vessels," *see, e.g., id.* ¶ 20 —Plaintiffs do not allege that the Government has disclosed their purported status to the general public. In an analogous case, the district court in *Tarhuni v. Holder* held that an instruction to an airline to deny boarding does "not constitute dissemination of the stigmatizing information in such a way as to reach the community at large[.]" 8 F. Supp. 3d 1253, 1275 (D. Or. 2014).[5] Other courts have reached similar conclusions, differentiating between the proper government use of information and the improper dissemination of potentially stigmatizing information to the public. *See Johnson v. Martin*, 943 F.2d 15, 17 (7th Cir. 1991) (no public disclosure when statements not disseminated beyond proper chain of command); *Van Atta v. Def. Intelligence Agency*, No. 87-1508, 1988 WL 73856, at *2-3 (D.D.C. July 6, 1988) (recognizing the "crucial distinction between official

---

[5] Plaintiffs assert that their boarding passes are stamped with the designation "SSSS" purportedly to reflect watchlist status. As explained above, that designation pertains to secondary screening for *any* reason, including random screening. Moreover, Plaintiffs do not allege that the purported significance of the designation is known to the general public or that the public knows what their passes contain.

disclosure and public disclosure" in cases where "[t]he government's decision to share information with a foreign power does not open that information to public scrutiny").

Several courts have correctly observed that "[s]ince every air passenger is subjected to a search, there is virtually no 'stigma attached to being subjected to search at a known, designated airport search point.'" *United States v. Hartwell*, 436 F.3d 174, 180 (3d Cir. 2006); *United States v. Skipwith*, 482 F.2d 1272, 1275 (5th Cir. 1973) (noting "the almost complete absence of any stigma attached to being subjected to search at a known, designated airport search point"); *United States v. Skipwith*, 482 F.2d 1272, 1275 (5th Cir. 1973)); *accord United States v. Wehrli*, 637 F.2d 408, 409 (5th Cir. 1981) (same). Further, every person entering the United States is subject to inspection by CBP officials. *United States v. Ramsey*, 431 U.S. 606, 619 (1977) ("Border searches . . . have been considered to be 'reasonable' by the single fact that the person or item in question had entered our country from outside."); *see also Carroll v. United States*, 267 U.S. 132, 154 (1925); *Flores-Montano*, 541 U.S. at 153; *Ekiu v. United States*, 142 U.S. 651, 659 (1892). Thus, Plaintiffs' allegations related to secondary inspection, even if true, do not establish the requisite public dissemination of stigmatizing information in order to state a valid claim on this basis.

Here again, the *Elhady* opinion misses the mark. The court determined that because plaintiffs alleged that TSDB status may be "disseminated to third parties outside the relevant federal agencies and airlines," such alleged dissemination "may be so widespread that it is tantamount to public disclosure, even if only distributed to other government and private entities that need the information for official objectives." *Elhady*, Dkt. 16-5 at 14-15. But the possibility that dissemination "may" occur is not sufficient for purposes of Rule 12. Moreover, the *Elhady* court itself acknowledged that the alleged information-sharing is not actually public, and the court there failed to consider whether such information-sharing is public in the sense that it matters for purposes of reputational injury, *i.e.,* harm to reputation within one's community. *See Paul*, 424 U.S. at 702. Setting aside the lack of factual support for the alleged dissemination at all, Plaintiffs do not allege, for example, that there is a public list of persons to whom guns cannot be sold, or that such lists are posted at gun retailers, or that similar lists exist for use by the captains of "sea-faring vessels" or car dealerships, or that any such information is otherwise made public by or at the behest of the Government within their community.

Further, various alleged and isolated instances of information-sharing cannot be lumped together, particularly absent credible allegations of reputational harm flowing from those individual disseminations. Rather, if specific instances of information-sharing are defamatory, they must be alleged and proven separately. *Paul*, 424 U.S. at 701 (requiring injury to reputation to be coupled with "tangible interests such as employment"). If the Plaintiffs had alleged (they have not) that they were denied access to a gun or a financial institution, those alleged deprivations would stand alone for purposes of the stigma-plus analysis. But the Plaintiffs have not alleged any specific instance of an alleged defamatory information sharing but rather improperly attempt to aggregate separate, purely theoretical events with no meaningful connection to each other or the Plaintiffs themselves.

In short, unsupported speculation that watchlist status is shared widely amongst various entities cannot support a claim absent any plausible allegations that the Plaintiffs have been the subject of such information sharing and meaningfully harmed as a result. The only allegation the Plaintiffs have put forward in this regard is that they have been screened at airports and inspected at border crossings. But there is no stigma attached to lawful screening and inspection, and the aggregation theory of stigma used by the *Elhady* court and advanced here is incorrect. *See Paul*, 424 U.S. at 711; *Beydoun*, 871 F.3d at 469.

### d.  Plaintiffs Fail to Allege a "Plus" Factor.

Plaintiffs also do not allege a "plus" factor as required to demonstrate a reputational harm amounting to an infringement of the Fifth Amendment. In *Paul v. Davis*, the Supreme Court concluded that reputational harm alone does not implicate a liberty or property interest, and as a result, a claimant must identify a "plus" factor establishing the deprivation of such an interest. *See* 424 U.S. at 701. In *Green v. TSA, supra,* a district court held that the allegation of reputational harm should be dismissed because the plaintiffs did "not allege[] any tangible harm to their personal or professional lives that is attributable to their association with the No-Fly List, and which would rise to the level of a Constitutional deprivation of a liberty right . . . [or] any injury to a property interest." 351 F. Supp. 2d at 1130. And in *Beydoun*, the Sixth Circuit held that plaintiffs claiming to be on the Selectee List "cannot show that their liberty interest in travel was infringed upon by being subject

to relatively minor additional screening." 871 F.3d at 469. There is no right to enter the country or board a plane without being subjected to inspection or search.

As noted, the Complaint contains a variety of alleged impacts of the federal watchlist, most of them implausible and not connected to the Plaintiffs' experiences. None are sufficient to establish the plus factor of a stigma-plus claim. For example, Plaintiffs claim that their alleged watchlist status functions to motivate traffic stops and to prohibit individuals from purchasing guns, obtaining Hazmat licenses, or working in the sterile areas of an airport. Compl. ¶¶ 46-53. They also allege that watchlist information is shared with municipal courts, which then use the information to make bail determinations. Compl. ¶ 54. But Plaintiffs never contend that *they* have experienced any of these things, let alone that such outcomes resulted from their alleged watchlist status. There is therefore no factual or legal basis for concluding that Plaintiffs suffered an alteration of legal status as a result of their alleged watchlist status. The law requires an actual alteration or extinguishment of a "right or status previously recognized by state law"; again, a theoretical set of potential alterations allegedly experienced by third parties is not sufficient. *Beydoun*, 871 F.3d at 469; *Green*, 351 F. Supp. 2d at 1130.[6]

### e.   The Redress Process Is Constitutionally Adequate.

Lastly on procedural due process, assuming the question even needs to be reached, the redress processes are adequate for both the Screening Plaintiffs and the No Fly List Plaintiff. "[I]t is by now well established that 'due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). Instead, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). In evaluating the adequacy of procedures, the Court should consider: (1) "the private interest that will

---

[6] Plaintiffs also claim that they have a liberty interest "in nonattainder (ie: the interest against being singled out for punishment without trial)." Compl ¶ 254. But, as the district court held in *Beydoun*, the security precautions described by Plaintiffs amount to permissible regulation as authorized by congressional mandate, not impermissible punishment. *See Beydoun*, 2016 WL 3753561, at *5–6; *see also Elec. Privacy Info. Ctr. v. DHS*, 653 F.3d 1, 10 (D.C. Cir. 2011) (the "primary goal" of airport screening protocols "is not to determine whether any passenger has committed a crime but rather to protect the public from a terrorist attack").

be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest," including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. *Homar*, 520 U.S. at 931-32 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Even if Plaintiffs had identified a constitutionally protected interest, as discussed above, their interest in the most convenient possible travel is quite limited. In contrast, "there is obviously a compelling government interest in preventing terrorist attacks against commercial aviation." *Mohamed v. Holder*, 266 F. Supp. 3d 868 (E.D. Va. 2017); *see also Haig v. Agee*, 453 U.S. 280, 307 (1981) ("[N]o governmental interest is more compelling than the security of the Nation.").

With respect to the No Fly List Plaintiff, the only court to assess the procedural adequacy of the current DHS TRIP procedures for U.S. persons who have been denied boarding on a commercial aircraft has upheld DHS TRIP under the Due Process Clause. *Latif*, 2016 WL 1239925, at *6 (D. Or. March 28, 2016); *see also Mohamed*, 2015 WL 4394958, at *13 (concluding that there is "nothing in the revised DHS TRIP that would preclude an adequate post deprivation process and the creation of an administrative record"). Mr. Kovac's premature rush to court notwithstanding, the redress procedures available to him through DHS TRIP provide a fair and proper administrative remedy that satisfies procedural due process. At a minimum, Mr. Kovac should be required to complete that process before launching a challenge to its adequacy. *Cf. Zinermon v. Burch*, 494 U.S. 113, 126 (1990) (procedural due process violation "is not complete unless and until the [government] fails to provide due process").

With respect to the Screening Plaintiffs, the process does not permit them to learn their status with respect to a watchlist, but is nonetheless adequate to protect against erroneous deprivation, especially given the extremely limited nature of the plaintiffs' interest in being free from searches at the airport. The plaintiffs' alleged interest must be evaluated within the context of an aviation security system in which all travelers are subject to some levels of screening and resulting inconvenience. *See Wilkinson v. Austin*, 545 U.S. 209, 225 (2005). When an individual is placed on the terrorism watchlist, that placement decision undergoes several

layers of review: (1) a decision by the nominating agency to nominate an individual for placement on the No Fly List, (2) a determination by TSC that placement in the TSDB is appropriate; (3) regular reviews and audits of placement, and (4) redress in which the traveler can draw the Government's attention to any possible errors by explaining the difficulties the traveler has encountered and submitting relevant information, and in which the Government conducts a review of available relevant information. *See* Piehota Statement. Providing additional process would not substantially reduce the risk of error but would undermine the Government's efforts to detect terrorist supporters and prevent terrorist attacks. There is substantial authority supporting the Government's interest in withholding watchlist status from the public, because it is operationally valuable information to terrorists. *Bassiouni v. CIA*, 392 F.3d 244, 245-46 (7th Cir. 2004); *Tooley v. Bush*, No. 06-306, 2006 WL 3783142, at *20 (D.D.C. 21, 2006), *aff'd, Tooley v. Napolitano*, 586 F.3d 1006 (D.C. Cir. 2009) (upholding government's position that confirming or denying records indicating plaintiff's presence on watch lists would reveal [sensitive security information]); *Al-Kidd v. Gonzales*, No. 05-093, 2007 WL 4391029, at *8 (D. Idaho Dec. 10, 2007). Relatedly, another court has held that pre-deprivation notice was not required even for persons on the No Fly List precisely because it "would alert an individual, and through him or her, others, whom the government suspects of terrorist activity, and thereby compromise on-going investigations and endanger those persons involved in those investigations." *Mohamed*, 2015 WL 4394958, at *8.

On balance, therefore, the harm to counterterrorism efforts caused by alerting individuals as to whether or not they are on a terrorist watchlist far outweighs the benefits of additional process for people who are merely subject to travel delays. *See Rahman v. Chertoff*, 530 F.3d 622, 627 (7th Cir. 2008) ("Any change that reduces the number of false positives on a terrorist watch list may well increase the number of false negatives."). Because both the Screening Plaintiffs and the No Fly List Plaintiff have received constitutionally adequate process, their procedural due process claims should be dismissed.

## V.  Plaintiffs' Substantive Due Process Claim Should Be Dismissed.

Plaintiffs also bring substantive due process claims based on their allegations that Defendants "deprived [them] of [their] constitutionally protected rights, including their liberty interests in travel, freedom from false stigmatization, and nonattainder," Compl. ¶ 260, and that these deprivations "place[] an undue burden on

their fundamental right of movement," *id.* ¶ 262, and "shock the conscience," id. ¶ 266. Under any formulation, Plaintiffs' substantive due process claim fails.

The interests protected by substantive due process are much narrower than those protected by procedural due process. *Jordan v. Fisher*, 823 F.3d 805, 812-13 (5th Cir. 2016). A "violation of substantive due process occurs only where the government's actions in depriving a person of life, liberty, or property are so unjust that no amount of fair procedure can rectify them." *Love v. Pepersack*, 47 F.3d 120, 123 (4th Cir. 1995); *see Simi Inv. Co. v. Harris Cnty., Texas*, 236 F.3d 240, 249-50 (5th Cir. 2000). The Supreme Court's test for substantive due process prohibits "only the most egregious official conduct" and rarely comes into play. *Jordan*, 823 F.3d at 812-13. Due to the heightened protection afforded substantive due process rights, the Supreme Court has required "a careful description of the asserted fundamental liberty interest," and a demonstration that the interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it was] sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). As discussed in connection with their procedural due process claim, none of the Plaintiffs has established a cognizable liberty interest, much less a right accorded substantive due process protections. *See supra*, Part V. The right to interstate travel is not offended by the searches, delays, or denials of boarding, and there is no right to international travel. *Haig*, 453 U.S. at 306. And even if a fundamental right were at issue, the one court to consider the question held that the No Fly List survives strict scrutiny. *Mohamed*, 266 F. Supp. 3d at 880.

Plaintiffs seek to frame the right at issue as a right of "movement." Compl. ¶ 262. But this broad invocation of a general "right of movement" ignores the Supreme Court's instruction that the substantive due process inquiry "must begin with a careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993).Here, however, there is no basis in the Constitution or Supreme Court precedent for Plaintiffs' purported fundamental "right of movement," Nor any  generalized "freedom of movement." *See Doe v. City of Lafayette*, 377 F.3d 757, 769 (7th Cir. 2004) ("It is much too broad . . . to characterize [the] liberty interest as involving a generalized right to movement."); *United States v. Bredimus*, 352 F.3d 200, 209 n.12 (5th Cir. 2003) ("We must distinguish between the right to travel generally versus the right to travel in foreign

commerce."); *Johnson v. City of Cincinnati*, 310 F.3d 484, 495 (6th Cir. 2002) (limiting the holding "to the right to travel locally through public spaces and roadways," rather than a broader right to freedom of movement"); *Hutchins*, 188 F.3d at 537 ("Since the right to free movement would cover both interstate and international travel, [Haig v. Agee] at least implies that the right recognized by the Court is decidedly more narrow."). Rather, as explained above, there is a fundamental right to interstate travel (not at issue here) and a lesser interest in international travel, subject to deferential review. Plaintiffs' attempt to ignore these distinctions on the basis of a never-before-recognized "right of movement" is unavailing.[7]

Further, Plaintiffs fail to sufficiently plead facts in support of their "facial" substantive due process challenge to the TSDB. Plaintiffs can succeed on a facial challenge only by "establish[ing] that no set of circumstances exists under which the [Act] would be valid," *i.e.*, that the "law is unconstitutional in all of its applications." *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2450-51 (2015). Plaintiffs therefore would have to establish that there are no circumstances in which the Government's interest in denying boarding or searching an individual who is boarding a commercial aircraft based on his or her status with respect to the TSDB can justify the impairment of that individual's interest in "movement." This they cannot do.

Plaintiffs' facial substantive due process challenge consists of a single sentence that essentially recites the "no circumstances" standard. See Compl. ¶ 269. Such a formulaic recitation of the applicable legal standard, without more, does not plausibly establish a substantive due process claim. *See Iqbal*, 556 U.S. at 678. While Plaintiffs assert that there is no need for them to undergo enhanced screening before they board a commercial airplane or inspection when crossing the border, their challenge to a purportedly incorrect government decision does not state a substantive due process claim. *See Iqbal*, 556 U.S. at 678 (demanding "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). And regardless, Plaintiffs could not show that inclusion in the TSDB is unconstitutional in all its applications. For example, Plaintiffs cannot demonstrate

---

[7] Plaintiffs' assertion that Defendants' conduct "shock[s] the conscience" is similarly implausible. Under this "strand" of substantive due process, egregious executive conduct is that which shocks the conscience and is "unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Rucker v. Harford Cty.*, 946 F.2d 278, 281 (4th Cir. 1991).  No such action is remotely at issue here.

that the Constitution prohibits TSA from subjecting a person to additional screening, pursuant to congressional directive, where the individual is reasonably suspected of being connected to terrorism. See 49 U.S.C. § 114(h)(3)(A), (B) (requiring TSA to identify travelers who may be a threat to civil aviation or national security and to take "appropriate action with respect to that individual"). Even where a plaintiff contends that there is insufficient evidence for him or her to have been so designated, this does not render the list *facially* invalid where, under the applicable criteria, the evidence in a given case would justify screening an individual who poses a terrorist threat and is about to board an aircraft. Likewise, since Plaintiffs cannot show that the denial of boarding would be unlawful in all settings, their facial challenge to the No Fly List necessarily fails.

For similar reasons, Plaintiffs' so-called "broad, as-applied" challenge should be dismissed. See Compl. ¶ 268. This iteration of Plaintiffs' substantive due process challenge is based on the claim that the watchlist is unconstitutional as applied to U.S. citizens who have not been charged with a crime. *See id.* This is not an "as-applied" claim at all; it is a different (if slightly narrower) facial challenge. Rather than putting at issue a plaintiff's own specific circumstances, the claim seeks invalidation of the watchlist for all U.S. citizens on the basis that the Government does not expressly link placement to an individual's criminal history. *See Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013). Thus, as with Plaintiffs' other facial challenge, the legal question raised by this claim is whether the watchlist may constitutionally be applied in any circumstance to a U.S. citizen who has not been charged with a crime.

Plaintiffs again have failed to state any such plausible facial challenge, as there clearly can exist valid reasons for the Government to place an individual in the TSDB and on the Selectee List or No Fly List, even where that person has not been indicted. For example, the Government may still be in the process of investigating an individual or his associates, may still be developing sufficient evidence for an indictment, or may be choosing not to indict yet in order to protect sources and methods of an ongoing investigation. In no case would such circumstances plausibly bar the Government from undertaking additional screening of a person who may be associated with terrorism before he boards an aircraft or any additional inspection before entering the country. And it is plain that there might be a sufficiently dangerous person who could not yet be

arrested but could be denied boarding. Because placement in the TSDB in advance of any criminal charge is not unconstitutional, Plaintiffs have not plausibly alleged a facial substantive due process claim.

## VI.   Plaintiffs' Equal Protection Claims Should Be Dismissed.

Plaintiffs' claims fare no better under the Equal Protection Clause. To state a claim, a plaintiff must plead sufficient facts to show plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus. *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999); *see also Twombly*, 550 U.S. at 560–61. A showing of disparate impact is insufficient to allege the necessary discriminatory intent. *See Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 818 (4th Cir. 1995).

Plaintiffs' equal protection claim consists of the bare assertion that Defendants' actions "have had a discriminatory effect upon and have disparately impacted . . . Muslim American travelers, and not travelers of other faiths." Compl. ¶ 283. But this statement simply restates the "threshold element" of the claim without any elaboration, fails to allege a plausible comparison to similarly situated groups, and thus is yet again an inadequate formulaic recitation of the claim. *See Iqbal*, 556 U.S. at 678. Far from alleging facts from which one would reasonably infer racial or religious animus, the Complaint acknowledges that discrimination on the basis of religion or race is contrary to the Government's policy and practice. Compl. ¶ 280. Moreover, Plaintiffs' assertions about the number of Dearborn residents purportedly on federal watchlists, *see* Compl. ¶ 7, are not further substantiated and in any event do not plausibly assert that placement on a watchlist is the product of religious (or geographic) bias or that other similarly-situated persons are not placed on a federal watchlist. *See Sylvia Dev. Corp.*, 48 F.3d at 818.

## VII.   Plaintiffs' Non-Delegation Claims Should Be Dismissed.

Count V of the Complaint fails to state a non-delegation claim. The non-delegation doctrine provides "that Congress may not constitutionally delegate its legislative power to another branch of Government." *Touby v. United States*, 500 U.S. 160, 165 (1991). But when Congress "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" *Mistretta v. United States*, 488 U.S. 361, 372 (1989) (citation

omitted).[8] To set forth a constitutionally permissible "intelligible principle" while delegating authority, Congress need only "clearly delineate[] the general policy, the public agency which is to apply it, and the boundaries of this delegated authority.'" *Mistretta*, 488 U.S. at 372–73.

The statutory scheme underlying the Government's watchlisting programs easily meets these requirements. Congress has charged TSA with overall responsibility for airline security. *See* 49 U.S.C. § 114(d). Together with the FBI, TSA must "assess current and potential threats to the domestic air transportation system," and "decide on and carry out the most effective method for continuous analysis and monitoring of security threats to that system." 49 U.S.C. § 44904(a). Moreover, in consultation with other federal agencies, TSA must "establish policies and procedures requiring air carriers [to] … prevent the individual from boarding an aircraft, or take other appropriate action with respect to that individual." 49 U.S.C. § 114(h)(1)–(3). This delegation of authority reflects a "clearly delineated … general policy" that is no broader in scope nor less "intelligible" in principle than any number of congressional directives that have withstood non-delegation challenges.[9] *See Elhady*, Dkt. 16-5 (rejecting identical non-delegation claims).

## VIII.   Plaintiffs' APA Claims Should Be Dismissed.

Plaintiffs' APA claim appears to be largely coextensive with their constitutional claims. They allege that they were stigmatized "without a constitutionally adequate legal mechanism" to challenge his placement. Compl. ¶ 274. Plaintiffs also state, in conclusory fashion, that they do "not present a security threat to commercial aviation." Id. ¶ 275. Even if the Court had jurisdiction, the claim would fail for the same reasons the procedural due process claim does, and Plaintiffs cannot separately demonstrate that the DHS TRIP process is arbitrary or capricious in violation of the APA. See 5 U.S.C. § 706(2)(A). If the Court were to

---

[8] The Court has sustained a non-delegation challenge in only two cases: once when a statute provided "literally no guidance for the exercise of discretion," and once when a statute allowed regulation of the entire economy based on nothing more than "assuring fair competition." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474 (2001) (citing *Panama Ref. Co. v. Ryan*, 293 U.S. 388 (1935); *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935)).

[9] The Supreme Court has sustained a range of statutes against non-delegation challenges far less clearly delineated than TSA's authority with respect to watchlisting to protect civil aviation and national security. *See, e.g., Whitman*, 531 U.S. at 473, 476 (upholding air quality standards at a level "requisite to protect public health"); *Touby*, 500 U.S. at 163 (upholding restriction on controlled substance if "necessary to avoid an imminent hazard to the public safety").

consider the due process issue as a separate APA claim, the scope of APA review is narrow and deferential, and a court cannot substitute its judgment for that of the agency. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  As long as the agency's action being challenged—here the adequacy of the redress process—has a rational basis, it must be affirmed. *See Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729 (1984). As set forth above, the contours of the redress process for persons either the No Fly or Screening Plaintiffs are plainly reasonable.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss this action.


Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ERIC R. WOMACK
DIANE KELLEHER
Assistant Branch Directors
Civil Division

 */s/ Samuel M. Singer*
SAMUEL M SINGER (D.C. Bar 1014022)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, D.C.  20530
Telephone:  (202) 616-8014
Fax:  (202) 616-8470

25