UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ADIS KOVAC, et al., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 3:18-CV-00110-X |
| CHRISTOPHER WRAY, et. al., | § § | |
| *Defendants*. | § § | |

## MEMORANDUM OPINION AND ORDER

This case involves a challenge to the No-Fly List and the related Screening List.[1] Before the Court, is defendants Christopher Wray, Charles H. Kable, Deborah Moore, Nicholas Rasmussen, David Peskose, and Kevin McAleen's ("the government" or "defendants") Motion for Judgment on the Pleadings [Doc. No. 47]. That motion is now ripe, and the Court **GRANTS IN PART AND DENIES IN PART** the motion. The Court **DISMISSES WITH PREJUDICE** all of plaintiffs' procedural (Count I) and substantive (Count II) due process claims related to an asserted liberty interest in nonattainder.[2] But the plaintiffs retain their Administrative Procedure Act claims (Count III).

---

[1] Individuals on the Screening List are not prohibited from flying but are subjected to heightened screening procedures.

[2] As discussed below, the Constitution outlaws bills of attainder, which the Supreme Court has defined as "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977).

## I. Background, Issues, and Standard of Review

This is the third memorandum opinion on this case, so the Court will not delve into the factual background yet again.[3] But a procedural background into the plaintiffs' substantive (Count II) due process claims is needed to contextualize the their current position.

In the plaintiffs' original complaint, they pled substantive due process rights under the Fifth Amendment of the Constitution. Specifically, the plaintiffs pled that the government placing them on the No-Fly and Screening Lists deprived them of "their [constitutional] liberty interests in travel, freedom from false stigmatization, and nonattainder."[4] The Court dismissed the plaintiffs' asserted liberty interests in a freedom from false information, while their asserted liberty interest in nonattainder survived. The plaintiffs asserted liberty interest in travel was broken up into two categories of plaintiffs. Kovac asserted a liberty interest in travel due to his placement on the No-Fly List, which survived dismissal. But the Court dismissed the Screening List plaintiffs' asserted liberty interest in travel.

Before *Kovac II* issued, the government removed Kovac from the No-Fly List, effectively mooting his claim on a substantive due process right to travel. Therefore,

---

[3] *See Kovac v. Wray*, 363 F. Supp. 3d 721, 731 (N.D. Tex. Mar. 5, 2019) (Lindsay, J.) [Doc. No. 12] (hereinafter *Kovac I*); *Kovac v. Wray*, 449 F. Supp. 3d 649, 651 (N.D. Tex. Mar. 27, 2020) (Starr, J.) [Doc. No. 43] (hereinafter *Kovac II*).

[4] Doc. No. 1 at 42.

after *Kovac II*, the plaintiffs maintained only one substantive due process liberty interest—an asserted interest in nonattainder.[5]

The plaintiffs now have three remaining claims: (1) procedural and (2) substantive due process claims predicated on their liberty interest in nonattainder from their placement on the Screening List (Counts I and II, respectively), and (3) Administrative Procedure Act claims (Count III). Therefore, the current motion and briefing cover three issues: (1) whether the government forfeited its defense for failure to state a claim on the plaintiffs' liberty interest in nonattainder, (2) whether the government has violated the plaintiffs' asserted liberty interest in nonattainder, and (3) the outcome of plaintiffs' Administrative Procedure Act claims.

## II. Legal Standard

"The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss."[6] Therefore, the Court "accept[s] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[7]

## III. Waiver of the Government's 12(c) Motion

The first issue here is purely procedural: whether the government waived its Rule 12(c) arguments by not bringing them in its Rule 12(b)(6) motion to dismiss. The plaintiffs argue the government waived the arguments by not raising them in its

---

[5] Based on the plaintiffs' pleading, the Court sees no other Fifth Amendment liberty interest beyond the three mentioned in the above paragraph. As discussed previously, the plaintiffs asserted the deprivation of Fifth Amendment Due Process rights including "travel, freedom of false stigmatization, and nonattainder," two of which the Court previously dismissed. *See* discussion *supra* Part I.

[6] *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

[7] *Id.* (quotation marks omitted).

motion to dismiss. The government responds that Rule 12(c) and (h)(2)(B) save the arguments contained in its Rule 12(c) motion. The Court agrees with the government.

Despite a prior round of motion-to-dismiss briefing, the government raised for the first time in its Rule 12(c) motion for judgment on the plaintiffs' nonattainder claims. A straightforward application of the Federal Rules of Civil Procedure allows the government—at the 12(c) stage of litigation—to assert its defense against the plaintiffs' asserted liberty interests in nonattainder. Rule 12(h)(2) states, "[f]ailure to . . . state a legal defense to a claim may be raised . . . by a motion under Rule 12(c)."[8] While the government could have raised its defense to nonattainder claims earlier, it did not have to. Therefore, the Court may evaluate the arguments in the government's Rule 12(c) motion.

## IV. Plaintiffs' Asserted Liberty Interest in Nonattainder (Counts I & II)

The defining feature of our government is separation of powers. The central question in analyzing the potential dismissal of Counts I & II of plaintiffs' complaint is whether or not the Constitution's nonattainder guarantee now applies to the executive branch, specifically an executive agency. The plaintiffs argue that because the clause's interest in nonattainder is so fundamentally important, it applies to agency action as well as legislative action. The government counters that the original, formal meaning of the Nonattainder Clause only applies to legislative action. The Court agrees with the government that the original public meaning of the

---

[8] FED. R. CIV. P. 12(h)(2).

Nonattainder Clause and relevant precedent confirm it only applies to legislative action.

The Nonattainder Clause states that "[n]o Bill of Attainder or ex post facto Law shall be passed."[9] The Supreme Court has defined a bill of attainder as "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial."[10] By using the term "law," the clause's guarantee applies only to legislative action.

The clause's history, context, and subsequent case law confirm this reading. "In England a bill of attainder originally connoted a parliamentary Act sentencing a named individual or identifiable members of a group to death."[11] To early Englishmen, "bills of attainder meant a very particular thing: parliamentary acts sentencing named persons to death without the benefit of a judicial trial."[12]

The Founders also understood that the clause's reference to "law" was a constitutional guarantee against the legislative branch. For instance, James Madison in Federalist 44 stated, "[b]ills of attainder . . . are contrary to . . . every principle of sound *legislation*."[13] Additionally, Alexander Hamilton in Federalist 80

---

[9] U.S. CONST. art. I, § 9, cl. 3.

[10] *Nixon,* 433 U.S. at 468.

[11] *Id.* at 473. Aren't you glad we declared our independence?

[12] *Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*, 909 F.3d 446, 454 (D.C. Cir. 2018) (quotation marks omitted).

[13] THE FEDERALIST NO. 44, at 282 (J. Madison) (C. Rossiter ed. 1961) (emphasis added).

expressly listed bills of attainder as one of the "specified exceptions to *legislative* authority."[14]

Likewise, the Supreme Court in its early days understood the clause's guarantee of nonattainder to apply to the legislative branch alone, but permitted an expansion of the categories of bills of attainder beyond England's original prohibition against acts sentencing citizens to death.[15] More recently, the Supreme Court reaffirmed its belief that, as originally ratified, the clause was a "general safeguard against *legislative* exercise of judicial function, or more simply—trial by *legislature*."[16]

The plaintiffs make an intriguing, but ultimately failing counter argument: if the Nonattainder Clause was such an important guarantee, why should the guarantee be limited to legislative action exclusively? A non-binding concurrence, albeit from the Supreme Court, echoes the plaintiffs' purpose-based approach: "I cannot believe that the authors of the Constitution, who outlawed the bill of attainder, inadvertently endowed the executive with power to engage in the same tyrannical practices that had made the bill such an odious institution."[17]

The problem with the plaintiffs' argument, however, is while binding authority has not *directly* ruled against expanding the clause to include agency action, the

---

[14] *Id.* NO. 80, at 476–77 (A. Hamilton) (emphasis added).

[15] *Fletcher v. Peck*, 10 U.S. 87, 138 (1810) ("A bill of attainder may affect the life of an individual, or may confiscate his property, or may do both.").

[16] *United States v. Brown*, 381 U.S. 437, 442 (1965) (emphases added).

[17] *Joint Anti–Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 143 (1950) (Black, J., concurring).

weight of authority supports the government's originalist approach—that the Constitution's guarantee of nonattainder applies exclusively to legislative action. The weightiest of the aforementioned authority comes from the Fifth Circuit, which, in failing to expand the Nonattainder Clause's guarantee of nonattainder to agency action,[18] noted that: "No circuit court has yet held that the bill of attainder clause . . . applies to regulations promulgated by an executive agency,"[19] and "the "bulk of authority suggests that the constitutional prohibition against bills of attainder applies to legislative acts, not to regulatory actions of administrative agencies."[20]

The plaintiffs cast doubt on *Paradissiotis v. Rubin* by categorizing it as "assum[ing] (without deciding) that an executive action can constitute a bill of attainder."[21] While the plaintiffs are technically correct in that *Paradissiotis*'s "assuming without deciding" framework does not bind this Court in one direction or

---

[18] *Paradissiotis v. Rubin*, 171 F.3d 983, 988–89 (5th Cir. 1999) ("Even if we were inclined to apply the bill of attainder clause to [agency action]. . . .").

[19] *Id.* at 988 (collecting cases).

[20] *Id.* at 989.

[21] Doc. 54 at 10.

another, the 7th,[22] 9th,[23] 10th,[24] 11th,[25] and Federal Circuit Courts of Appeals[26] have all likewise declined to extend the clause to agency action.  Those courts aren't binding, but they are right.  The Nonattainder Clause refers to "bills" and "law," which were and are the province of the legislature.[27]  Even if the administrative state has grown far beyond what Madison feared and Hamilton dreamed of, this Court will not rewrite the Constitution.   If applying the Nonattainder Clause's guarantee of nonattainder beyond its original meaning to include agency action is as laudable as the plaintiffs suggest, then the processes to amend the Constitution established in Article V should be no meaningful impediment to updating the Constitution.

Applying that legal framework to these facts, the plaintiffs were placed on their respective lists not by legislative action, but by an amalgamation of agency action. Ultimately, the Terrorist Screening Center ("Screening Center"), an agency, follows

---

[22] *Glob. Relief Found., Inc. v. O'Neill*, 315 F.3d 748, 755 (7th Cir. 2002) ("Application of the IEEPA is not a bill of attainder; implementation of the statute is in the hands of the Executive and Judicial Branches, while a bill of attainder is a decision of guilt made by the Legislative Branch.").

[23] *Marshall v. Sawyer*, 365 F.2d 105, 111 (9th Cir. 1966) (In response to appellant's contention that Justice Black's concurrence in *McGrath*, 341 U.S. 143 "imply[ies] that an act by an administrative or executive branch of government may constitute a bill of attainder[,] the Court holds that "[w]e do not regard the language relied upon as authority for thus expanding what appellant himself concedes to be the traditional role of a bill of attainder.").

[24] *Walmer v. U.S. Dep't of Def.,* 52 F.3d 851, 855 (10th Cir. 1995) ("The bulk of authority suggests that the constitutional prohibition against bills of attainder applies to legislative acts, not to regulatory actions of administrative agencies.").

[25] *Scheerer v. U.S. Att'y Gen.*, 513 F.3d 1244, 1253 n.9 (11th Cir. 2008) ("We have never held that the Constitution's Bill of Attainder Clause . . . is applicable to Executive Branch regulations, and other courts have suggested to the contrary.").

[26] *Korte v. Office of Pers. Mgmt.*, 797 F.2d 967, 972 (Fed. Cir. 1986) ("Korte has cited no authority, and we are aware of none, holding that the clause applies to the executive branch.").

[27] This is an elementary principle. *See Schoolhouse Rock!: I'm Just a Bill*, ABC (1976) (describing the process of how a bill becomes a law), https://www.youtube.com/watch?v=Otbml6WIQPo.

a two-prong test to determine if someone—including the plaintiffs—is placed into the Terrorist Screening Database ("Database").[28] But other agencies can nominate Database entries through a nomination process to the National Counterterrorism Center ("Counterterrorism Center"), which then reviews and recommends potential entries to the Screening Center for possible placement.[29] In any event, regardless of whichever agency nominated the plaintiffs to the Screening Center, the nomination and subsequent review and placement were a result of executive action by means of agencies, not legislative action by Congress.

To summarize, because no bill of attainder has occurred, the plaintiffs' protected liberty interest in nonattainder is uninfringed. And because the plaintiffs' substantive liberty interest in nonattainder is uninfringed, the plaintiffs' procedural due process interest in nonattainder is, likewise, uninfringed.[30] Therefore, the Court dismisses the plaintiffs' procedural and substantive claims (Count I and Count II), which are predicated on an asserted liberty interest in nonattainder.

The only remaining question is whether the plaintiffs are entitled to replead these nonattainder claims. They are not. Whether the plaintiffs style the argument as under the Nonattainder Clause or a nonattainder argument under the Due Process

---

[28] *See Kovac I*, 363 F. Supp. 3d at 733.

[29] *See id.*

[30] *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the [Constitution's] protection of liberty and property.").

Clause, neither legislative argument can prevail against agency action. Therefore, any pleading amendment of these nonattainder claims would be futile.[31]

## V. The Plaintiffs' Administrative Procedure Act Claims (Count III)

The government argues in its Rule 12(c) motion (like it did in the motion to dismiss phase) that the plaintiffs' Administrative Procedure Act claims are "largely coextensive with [the plaintiffs'] constitutional claims."[32] In the government's words: "[T]he only claims remaining in this terrorism watchlisting case are due process and coextensive Administrative Procedure Act [] claims based on Plaintiffs' alleged 'liberty interest in nonattainder,'"[33] and "the Court has recognized that Plaintiffs' [Administrative Procedure Act ] claims are coextensive with their due process claims."[34] The plaintiffs respond that their Administrative Procedure Act claims "are not dependent on the existence of" their claims predicated on a liberty interest in nonattainder.[35] In other words, the Administrative Procedure Act claims and the constitutional claims are isolated, independent claims. The Court agrees with the plaintiffs.

The government is arguing a logically untenable position. In its current motion, the government argues that the "Bill of Attainder Clause applies to

---

[31] *See DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir. 1968) ("The liberal amendment rules of F.R.Civ.P. 15(a) do not require that courts indulge in futile gestures. Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted.").

[32] Doc. No. 8 at 34.

[33] Doc. No. 47 at 8.

[34] Doc. No. 47 at 11 n.4.

[35] Doc. No. 54 at 17.

legislative enactments, not agency actions."[36]  As noted above, the Court agrees with this originalist view.  But unlike the Nonattainder Clause, under the Administrative Procedure Act, "[a] person suffering a legal wrong because of *agency* action, or adversely affected or aggrieved by *agency* action within the meaning of a relevant statute, is entitled to judicial review thereof."[37]

The plaintiffs make arguments under their Administrative Procedure Act Claim that are not limited to nonattainder.  *Kovac I* ruled that: "Plaintiffs' factual allegations make plausible their claim that Defendants' actions were arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law."[38]  And the Administrative Procedure Act claim also alleges nominations were solely based on such factors as race, ethnicity, national origin, religious affiliation, or First Amendment protected activities.  These allegations are not necessarily dependent on the attainder arguments and would require further development.  Thus, the Court will defer to its prior ruling that the plaintiffs' Administrative Procedure Act claims survive this pleadings stage of litigation because "development of the factual record"[39] is necessary.

## VI. Conclusion

For these reasons, the Court **GRANTS IN PART AND DENIES IN PART** the government's *Motion for Judgment on the Pleadings* [Doc. No. 47].  The Court

---

[36] *See* Doc. No. 47 at 13–17.

[37] 5 U.S.C. § 702 (emphases added).

[38] *Kovac I*, 363 F. Supp. 3d at 759.

[39] *Id.*

**DISMISSES WITH PREJUDICE** the plaintiffs' procedural and substantive due process claims relating to an asserted liberty interest in nonattainder (Counts I and II). The plaintiffs retain their Administrative Procedure Act claims (Count III).

The parties previously conferred in April 2020 and filed proposed scheduling orders on June 12, 2020. Given that the Court has now ruled on the government's Rule 12(c) motion, the Court orders the parties to meet and confer and submit an updated proposed scheduling order to Court within 14 days of the date of this order. The Court administratively closes this case and will reopen it once the Court issues an amended scheduling order.

**IT IS SO ORDERED** this 6th day of November 2020.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE