UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

ADIS KOVAC, et al.,

      Plaintiffs,

      v.

CHRISTOPHER WRAY, et al.,

      Defendants.

Case No. 3:18-cv-110-X

**PLAINTIFFS' OPPOSITION TO
MOTION FOR LEAVE TO FILE RECORDS EX PARTE AND UNDER SEAL
AND PLAINTIFFS' MOTION FOR LIMITED APA DISCOVERY**

Plaintiffs, individuals on the Government's Terrorism Screening Database, known as the TSDB or the watchlist, struggle through an unending set of life-defining consequences. Children are separated from their parents, and innocent people—U.S. citizens who have never been charged, arrested, or convicted of violent crimes—are denied the ability to attend weddings and funerals and otherwise access modern transportation. Each Plaintiff has been branded as a "known or suspected terrorist," then had that label disseminated throughout the country and the world to local, state, federal and foreign governments. The Government even disseminates their status to a secret list of private companies.

Based on these facts, the sole remaining claim here is under the Administrative Procedures Act. As this Court ruled, "Plaintiffs' factual allegations make plausible their claim that Defendants' actions were arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." *See* Dkt. 57 at 11. Plaintiffs' APA claim also plausibly claims that under the watchlisting system, nominations are "based on such factors as race, ethnicity,

national origin, religious affiliation, or First Amendment protected activities." *Id.* To resolve

Plaintiffs' claim requires "development of the factual record."

The Government has now produced what it purports to be an APA record. Some of it

is under seal, and the Government provides not even a privilege log. So, Plaintiffs have no

way of knowing what the record includes and what it does not. For instance, although

Plaintiffs suspect that the Government has omitted the weekly and monthly watchlist

statistical reports that they believe will demonstrate that the watchlist is "no more effective

than a list of randomly selected individuals," without a privilege log of the withheld

documents, Plaintiffs are left to speculate. *See* Dkt. 1 at ¶ 94-107. These statistical reports are

particularly important, because in them, the Government tracks each time a listed person is

"encountered" as well as the outcome of that encounter[1]—information that Plaintiffs believe

will show that the Government knows that its extensive, worldwide dissemination of the

watchlist has led to no terrorism-related arrests.

Of the part of the record the Government filed publicly, it is almost entirely just the

documents it has provided in a different lawsuit involving a different issue (whether the

watchlist satisfies constitutional due process). The Government does not hide this fact—

almost every document in the public part of the record either has a bates stamp or a caption

from another case.

---

[1] The Government considers a TSDB "encounter" to be any time a listed person is screened against the watchlist. When a listed person applies for a gun permit, is pulled over for speeding, seeks a prison's permission to serve as a volunteer chaplain, applies for probation, applies for a hazmat license, seeks federal government employment, applies for an immigration benefit or a visa, crosses a border, travels by air, among other "encounters" with local, state, federal, and even foreign governments—the Government tracks these "encounters," including how many of them result in an arrest.

Although what the Government has withheld remains a guess to Plaintiffs, it almost certainly includes details about (a) what the proper standards are for putting individuals on the challenged watchlist, including information that will determine whether those standards are arbitrary, capricious, or involve improper or unconstitutional factors; (b) what the consequences of watchlist placement are; and (c) statistical information that Plaintiffs believe will numerically demonstrate the watchlist's arbitrary and capricious nature. This information should not be withheld from Plaintiffs who are challenging these standards and the consequences imposed on those Defendants secretly determine meet those standards. The withheld information also likely includes the details regarding why the individual Plaintiffs were put on the watchlist, and this information should also be made available, at least to Plaintiffs and/or their counsel.

If the withheld parts of the record do not contain this information, it is woefully underinclusive and APA discovery is warranted. Even if it does have that information, APA discovery is still warranted because it appears the record is made up of post-hoc justifications for watchlist decisions rather than the predecisional record the Government relied on in adopting the watchlist's inclusion standards and determining what consequences are imposed on the listed.  And APA discovery is separately justified because the little we do know about the watchlist (including from leaks of information the Government has refused to make public) indicate that the Government's justifications are made in bad faith, that the Government own reports reveal the watchlist to be statistically arbitrary, and that the watchlisting system may amount to nothing more than a standardless system that has the design and effect of merely discriminating against Muslims.

**ARGUMENT**

I.   **The Law Enforcement Privilege does not allow the Government to file parts of the record under seal without disclosure to Plaintiffs or their counsel.**

A.   **The Law Enforcement privilege is overcome in this case.**

The law enforcement privilege is a "[f]ederal common law" privilege that protects "investigative files in an ongoing criminal investigation." *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir.1991). The privilege is qualified. *Id.* When the privilege is invoked, courts "should review the documents at issue in camera to evaluate whether the law enforcement privilege applies to the documents at issue." *In re DHS*, 459 F.3d 565, 570 (5th Cir. 2006). "In making its determinations, the court must balance the government's interest in confidentiality against the litigant's need for the documents." *Id.* (cleaned up).

In determining whether the privilege is overcome, courts in the Fifth Circuit use the ten factors set forth in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. Mar.13, 1973). *In re DHS*, *id*. Those ten factors are: "(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought

is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case." *In re DHS, id.*

Still, it appears from the Government's submission (Dkt. 66) that the withheld documents fall into one of two categories: (1) documents about Plaintiffs, and (2) documents about the watchlisting system generally. The first category is relevant to Plaintiffs' as-applied challenge, although they may also provide details and context about how the watchlisting system applies more generally. The second goes to Plaintiffs' more general challenge that the watchlisting system itself is arbitrary, capricious, and contrary to law.

For both categories, it seems the first three *Frankenhauser* factors (discouraging public sharing of information, disclosing confidential sources, and the effect of disclosure on self-evaluation), as well as factor seven (effect on interdepartment disciplinary proceedings) do not apply to any of the documents.

Factor four (whether the information is factual or evaluative) would depend on the particular document but again likely plays a minimal role in this analysis. Factors five (whether the documents would reveal individuals in current or imminent criminal proceedings) and six (whether a criminal investigation is completed) would play no role in the latter category of documents, and Plaintiffs do not believe it plays any role in the former category either. Indeed, publicly available information about the Government's watchlisting processes reveals that federal agents need not suspect listees of any criminal wrongdoing before listing them.

Meanwhile, factors eight through ten—whether the Plaintiffs' suit is frivolous, whether Plaintiffs could get the information in the documents from other sources, and whether the information is important to the case—all weigh in favor of disclosure. This Court has already

ruled that Plaintiffs' suit has merit, the in-government-hands-only nature of the information makes it unavailable from other sources, and the Government itself has indicated the information is important to the case as they have put together the record in this action.

> **B.        The Government should not be able to avoid disclosure of information showing the standards for or consequences of watchlist placement.**

To be fair, the *Frankenhauser* factors do not ultimately get at the real reason the Government wants to avoid disclosure of each category of documents.

The Government does not want to disclose information about the plaintiffs being on the watchlist or why they were on the watchlist because keeping that information secret is inherent to their concept of a secret, review-free, and extrajudicial watchlist. But there is a reason the *Frankenhauser* factors do not support such forms of nondisclosure outside of an ongoing criminal investigation: it is because the nature of the Government's system is so antithetical to due process and the rule of law in the first place. It is permanent punishment without recourse or any sort of process.

The Government does not want to disclose the latter information because they believe that using the watchlist as punishment would be undermined if the details of it were made public. But this is not just information regarding ongoing surveillance. This is a watchlisting system with long-term and often permanent effects, not tied to the duration of any investigation, that results in government action that amounts to punishment, for which no process at all is provided. Made worse, what we already know about the inclusion standard makes it "easy to imagine completely innocent conduct serving as the starting point for a string of subjective, speculative inferences that result in a person's inclusion." *Elhady v. Kable*, 391 F. Supp. 3d 562, 581 (E.D. Va. 2019), *rev'd on other grounds*, 993 F.3d 208 (4th Cir. 2021). And this problem is compounded because watchlist information is not rigorously reviewed.

See *Elhady v. Kable*, 20-1119, Brief of Appellees (Dkt. 56) (Ex. A) at 21 (99% acceptance rate for nominations)), 18-22 (TSC employees review inclusion requests for, at most, 10 minutes per request, and likely far less).

Indeed, the core guidance covering the watchlist was leaked to The Intercept in July 2014. *See* Exhibit A.[2] On its face, that document was labeled unclassified/SSI. *Id.* The information included in that document was much of the information the Government jealously refuses to disclose, such as the details regarding watchlist process as well as even the basic inclusion standard for the Selectee List, on which the Government has placed all Plaintiffs. Ex. A at §§ 3-4; *see id.* at § 4.11. (The Government refuses to provide the updated guidance or to disclose whether any of the guidance has changed since 2013. The Government's official policy is also not to confirm or deny the authenticity of the watchlisting guidance.)

And yet, as far as Plaintiffs can tell, there has been no evidence suggesting that the 2014 leak had any impact on national security. Maybe there is some claim of evidence hiding somewhere in the information the Government has submitted under seal. But even if there is, Plaintiffs would argue that the Government's claim of injury from disclosure is more strategic than real. Only the adversarial system could resolve this disagreement, and the Government's submission of this information under seal renders the adversarial system impotent.

The job of law enforcement would of course be easier if governments could prosecute individuals without providing them any notice at all as to what does and does not constitute

---

[2] Jeremy Scahill and Ryan Devereaux, *The Secret Government Rulebook for Labeling You a Terrorist*, THE INTERCEPT (July 23, 2014), *available at* https://theintercept.com/2014/07/23/blacklisted/. The Guidance is separately available at https://theintercept.com/document/2014/07/23/march-2013-watchlisting-guidance/.

a crime (lest criminals circumvent the criminal code), nor any notice as to what the consequences are (lest criminals figure out what crimes lead to what consequences and adjust their behavior accordingly). But nobody would argue the penal code is protected by the law enforcement privilege. And yet that is essentially the very argument the Government makes by claiming to keep the details of the watchlisting system—and in particular, the standards for and consequences of placement—secret from both the public as well as from Plaintiffs who have been listed for punishment.

     **C.**     **The Court should order the Government to produce a privilege log.**

Without access to the documents or even a privilege log, Plaintiffs cannot meaningfully assess the documents Defendants want the Court to review in camera. Because of this—to the extent the Court does not simply deny the Government's attempt to submit part of the record ex parte outright—the Court should order the Government to produce a privilege log of the withheld documents and allow Plaintiffs to provide a substantive response. In this way the Court can ensure that it hears from both sides before determining privilege issues, as well as the sufficiency of the record and need for any APA discovery.

     **D.**     **At minimum, the court should review the documents in camera to determine whether they may be kept secret.**

As explained by *In re DHS*, the Court should review the documents submitted ex parte in camera to determine whether they should be disclosed. 459 F.3d at 570 ("the district court should review the documents at issue in camera to evaluate whether the law enforcement privilege applies to the documents at issue").

Here, in particular, the Court's review of the materials in camera for this reason will not waste judicial resources since they are already being submitted to the Court ex parte and will need to be reviewed for purposes of determining the merits of this case in any event.

Although Plaintiffs do not agree with the Government that it can just refuse to provide a privilege log outright, in the event that the Court allows the Government to do so, the Court should review the material itself to determine the propriety of providing it ex parte and in camera.

> ### E.    The Government's cases are inapposite.

The Government cites a handful of cases involving motions to unseal information already provided in the adversarial process. *See Chavez v. Standard Ins. Co.*, No. 3:18-CV-2013-N, 2020 WL 6382611, at *2 (N.D. Tex. Oct. 30, 2020); *Salcido as Next Friend of K.L. v. Harris Cty., Texas*, No. CV H-15-2155, 2018 WL 4690276, at *55 (S.D. Tex. Sept. 28, 2018). Those are irrelevant. To be clear, to the extent necessary, Plaintiffs are willing to enter into protective orders or even Attorneys Eyes Only orders to the extent absolutely necessary in order to review the information and ensure that it is capable of challenging the watchlisting system in this case.

Other cases the Government cites involve decisions in particular instances where courts reviewed documents ex parte in camera. But each are distinguishable and none go anywhere near as far as the Government asks here, to involve non-classified documents about a challenged program. For example, *Jifry v. F.A.A.* involved materials marked "classified" and SSI. 370 F.3d 1174, 1182 (D.C. Cir. 2004). In this case, the Government does not argue the materials they wish to file under seal are classified, and Plaintiffs' counsel have been approved to review SSI information. *Jifrey* also made clear the inappropriateness of relying on FOIA cases such as *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011); *Gordon v. F.B.I.*, 388 F. Supp. 2d 1028, 1037 (N.D. Cal. 2005), and *Tooley v. Bush*, No. 06-306, 2006 WL 3783142, at *20 (D.D.C. Dec. 21, 2006). 370 F.3d at 1182 ("Reliance on *Vaughn* is misplaced, in any

event, because that case involved the Freedom of Information Act and presented a very different situation than that presented here"). Further, *Jifrey* involved discrete intelligence reports, not a broad, handpicked record about a secret watchlisting system that has never been authorized or approved by Congress. *Id.* at 457-58. *Gilmore v. Gonzales* likewise involved discrete materials—a single Security Directive—that were marked SSI, for which Plaintiffs' counsel here should have access. 435 F.3d 1125, 1133 & n.8 (9th Cir. 2006). And *Tabbaa v. Chertoff*, involved a single classified intelligence report, that the Court only reviewed on its own initiative in an abundance of caution. 509 F.3d 89, 93 n.1 (2d Cir. 2007).

Meanwhile, *Meridian Intern. Logistics, Inc. v. U. S.* involved a "unique" situation where the question before the Court was whether a special agent was acting within the scope of his official capacity when he was investigating Meridian, who brought a claim for defamation. 939 F.2d 740, 745 (9th Cir. 1991). The Court cautioned that it allowed ex parte review only because the documents "relate to an ongoing investigation" and "remain confidential," and because in that case "its interests as a litigant [were] satisfied by the ex parte/in camera decision of an impartial district judge." *Id.* But "because procedures such as these should be used only in unique situations, we are careful to limit our holding to the precise facts of this case." *Id.*

*Bassiouni v. FBI*, 436 F.3d 712, 722 n.7 (7th Cir. 2006), in contrast, was decided exclusively on waiver grounds due to the plaintiff's failure to object. Similarly, *Kashem v. Barr*, 941 F.3d 358, 389-90 (9th Cir. 2019), provides no explanation or reasoning for whether the District Court's *sua sponte* order to review plaintiffs' watchlisting files was appropriate, and review of the public portions of the lower court's record does not indicate any briefing or other opposition to this by plaintiffs' counsel in that case.

The Government also quotes *Bassiouni*, 392 F.3d at 246, as saying, "the only way to keep secrets is to maintain silence uniformly." But the Government leaves out part of the sentence to obscure its meaning. The Seventh Circuit said this was only necessary "when a pattern of responses itself reveals classified information," which is not the case here. *Id.* Even as to just Plaintiffs' information, the Government has eschewed uniformity when it has helped them. For instance, in a different case, when watchlist information inured to the Government's benefit, the Government disclosed watchlist status to Plaintiffs' counsel under an Attorneys' Eyes-Only protective order. *See Fikre v. FBI*, 13-cv-899, Dkts. 131, 138, 139 (Exs. E-G) (D. Or.). The only meaningful difference between that case and this one was that, in *Fikre*, disclosure was advantageous to the Government, while here, disclosure would be disadvantageous. *Id.*, Dkt. 138 at 2. But privileges cannot be used as both a sword and a shield. *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 n.18 (5th Cir. 1999).

*Al-Kidd v. Gonzales*, No. 05-093, 2007 WL 4391029 (D. Idaho Dec. 10, 2007), in contrast, did allow the Government to decline to provide plaintiff-based watchlist information in discovery. Plaintiffs disagree with the Court's conclusion. But even there, only Plaintiff-based, not programmatic, documents were filed. And the Court did not bless the Government's use of the information. It merely reviewed certain documents in camera to support the application of a privilege. It did not then allow the Government, in violation of the sword-shield privilege, *see Nguyen v. Excel Corp.*, 197 F.3d at 207 n.18, to use those documents to defeat Plaintiffs' claims on the merits.

## II.    The Court should order limited APA discovery.

"Courts have recognized exceptions to the general rule that judicial review of a federal agency's decision is limited to the record already in evidence. For example, courts allow extra-

record evidence: (1) when agency action is not adequately explained in the record before the court; (2) when looking to determine whether the agency considered all relevant factors; (3) when a record is incomplete; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues; (5) when evidence arising after the agency action shows whether the decision was correct or not; (6) in certain NEPA cases; (7) in preliminary injunction cases; and (8) when an agency acts in bad faith." *City of Dallas, Tex. v. Hall*, 07-cv-60, 2007 WL 3257188, at *5 (N.D. Tex. Oct. 29, 2007).

Plaintiffs do not assert that issues 5-7 are pertinent to this case.

**A.      The Court should review the ex parte documents to determine whether the submitted record shows a need for additional APA discovery.**

"The Supreme Court has long held that expansion of the administrative record is appropriate in certain cases where the record is insufficient, such as when the record submitted fails to explain the basis for the agency's action, thereby frustrating judicial review." Hall, 2007 WL 3257188, at *5 (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971)). *Hall* grounds 1-4 each go to the completeness of the record.

As far as *Hall* grounds 1-4, Plaintiffs are currently at a bit of a disadvantage. Certainly, from what has been publicly disclosed, factors 1-4 apply. The publicly-disclosed record provided in this case cannot be seen in any way to be a full or even adequate explanation of how the Government came to its decisions as to developing the watchlisting standards and its consequences. Indeed, the public record—which is almost entirely just the documents produced or created in response to other litigation, complete with bates stamps already on it—does not even provide a full explanation of what the standards for or consequences of watchlisting placement are. It is unclear, at best, whether the documents provided ex parte and in camera provide any better of an explanation. It is also unclear whether any of the

documents show the record that was before the agency when they made the important decisions being challenged. To the extent it does not, APA discovery is warranted.

**B.   The Court should order APA discovery due to the Government's bad faith.**

Plaintiffs seek limited APA discovery on the basis of *Hall* ground 8. Bad faith has two different meanings in APA record disputes. First, bad faith can include bad faith in compiling the record. Hall, 2007 WL 3257188, at *5 . So, "[f]or example, courts have held that plaintiffs are entitled to an opportunity to determine whether any other documents that are properly part of the administrative record have been withheld." *Id.* (citing *Pension Benefit Guar. Corp. v. LTV Steel Corp.*, 119 F.R.D. 339, 341 (S.D.N.Y.1988)). "[T]he only way a non-agency party can demonstrate to a court the need for extra-record judicial review is to first obtain discovery from the agency." *Id.* (citing *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F.Supp.2d 7, 12 (D.D.C. 2001)). This is the only way "to see what the agency may have ignored." *Id.* (citing *Davis Mountains Trans-Pecos Heritage Ass'n v. U.S. Air Force*, 249 F.Supp.2d 763, 776 (N.D.Tex.2003), and *County of Suffolk v. Sec'y of the Interior*, 562 F.2d 1368, 1384 (2d Cir.1977)).

Although Plaintiffs do not have access to the entire record submitted, it appears from the most part that the record provided was developed not by taking the materials before the agency at all relative timeframes but by taking the *Elhady* documents and supplementing them in some unknown way, likely in a selective manner. Much of the documents produced were created after the fact. *See Davis*, 249 F. Supp. 2d at 776 ("new material, however, should be explanatory of the decisionmakers' action at the time it occurred. No new rationalizations for the agency's decision should be included") (quoting *Sierra Club v. Marsh*, 976 F.2d 763, 772-73 (1st Cir. 1992)). It does not appear from the public version of what was provided that the

Government put forth the whole administrative record as it existed at the time of the challenged agency action." *Sharkey v. Quarantillo*, 541 F.3d 75, 93 n.15 (2d Cir. 2008); *see also State of La., ex rel. Guste v. Verity*, 853 F.2d 322, 327 n.8 (5th Cir. 1988) "Agency action is to be upheld, if at all, on the basis of the record before the agency at the time it made its decision").

Second, bad faith can include when there is credible reason to believe that the Government's real reason for acting is inconsistent with the reason they provide for agency action. *Overton Park*, 401 U.S. 402 at 420. The risk of bad faith is particularly high where, as here, there is no contemporaneous explanation for the Government's actions and thus only a "post hoc rationale" for the Government's actions. *Id.* Thus, in *Overton Park*, the lack of contemporaneous formal findings was deemed sufficient to meet the "strong showing of bad faith" necessary for APA discovery to go forward. *Id.*

And, on top of that, everything we know about the watchlist shows independent evidence of bad faith. The 2013 guidance allows placement without any "concrete facts," Ex. B at § 3.5, and instructs nominators to "nominate even if the source is uncorroborated," because the nominator should just "assum[e] the information supports a REASONABLE SUSPICION that the individual is a KNOWN OR SUSPECTED TERRORIST or there is another basis for watchlisting the individual," *id.* at § 3.6. Mere attendance at schools that "teach[] an ideology that includes the justification of the unlawful use of violence" or mere "contact with individuals" who espouse such an ideology is grounds for inclusion. *Id.* at §§ 3.9.2-3; *see also Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 253 (2002) ("government may suppress speech for advocating the use of force or a violation of law only if 'such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action'") *(quoting Brandenburg v. Ohio,* 395 U.S. 444, 447 (1969) (per curiam)).

Close family and "associates" of individuals on the watchlist may be watchlisted without any further derogatory information, even if the association in question has nothing to do with terrorism. Ex. B at § 3.13.4 & 3.14.1.1.[3] Individuals may be watchlisted merely because they possess certain weapons even if that possession is legal or constitutionally protected. *Id.* § 3.13.10. Individuals will be watchlisted merely because a foreign government requests it. *Id.* § 3.13.3. Americans who are "acquitted or against whom charges are dismissed for a crime related to terrorism" may be listed. *Id.* 3.13.3. The guidance even allows the nomination of entire "categories of people" with White House approval. *Id.* § 4.15.5.

And both circumstantial evidence (in the form of cases brought against the watchlist)[4] as well as limited leaked information (for instance, Dearborn, a city of 96,000 with no connections to any acts of terrorism but also the city with the highest concentration of Muslims in America has the second-largest number of individuals on the watchlist of any American city)[5] indicates that the watchlist disproportionately, and perhaps almost entirely, targets Muslims. This is true even though, in the Government's own official documents, it

---

[3] U.S. citizen and national family members must have *some* independent derogatory information to be included under the 2013 standards.

[4] *See Rahman v. Chertoff*, 05-cv-3761 (N.D. Ill.); *Ibrahim v. DHS*, 06-cv-00545 (N.D. Cal.); *Scherfen v. DHS*, No. 08-cv-1554 (M.D. Pa.); *Latif v. Holder*, 10-cv-00750 (D. Or.); *Shearson v. Holder*, 10-cv-1492 (N.D. Ohio); *Mohamed v. Holder*, 11-cv-50 (E.D. Va.); *Abdallah v. JetBlue Airways Corp.*, 12-cv-1050 (D.N.J.); *Mokdad v. Holder*, 13-cv-12038 (E.D. Mich.); *Fikre v. FBI*, 13-cv-899 (D. Or.); *Tarhuni v. Holder*, 13-cv-1 (D. Or.); *Tanvir v. Tanzin*, 13-cv-6951 (S.D.N.Y.); *Ege v. DHS*, 13-1110 (10th Cir.); *Beydoun v. Lynch*, 14-cv-13812 (E.D. Mich.); *Kadura v. Lynch*,14-cv-13128 (E.D. Mich.); *Long v. Lynch*, 15-cv-1642 (E.D. Va.); *Bazzi v. Lynch*, 16-cv-10123 (E.D. Mich.); *Elhady v. Kable*, 16-cv-375 (E.D. Va.); *Amiri v. Kelly*, 17-cv-12188 (E.D. Mich.); *Abdi v. Wray*, 17-cv-622 (D. Utah); *Chebli v. Kable*, 21-cv-00937 (D.D.C.); *Jardeneh v. Garland*, 18-cv-2415 (D. Md.); *Wilwal v. Nielsen*, 17-cv-2835 (D. Minn.).

[5] Jeremy Scahill and Ryan Devereaux, *Watch Commander: Barack Obama's Secret Terrorist-Tracking System, by the Numbers*, THE INTERCEPT (Aug. 5, 2014), *available at* https://theintercept.com/2014/08/05/watch-commander/.

has determined that the biggest terrorism threat to the United States comes from white nationalists.[6]

## CONCLUSION

The Court should order the Government to provide Plaintiffs with a privilege log of the documents for which it seeks ex parte and in camera review, allow Plaintiffs to file a supplemental response based on that privilege log, and then to disclose all or part of that record ex parteto plaintiffs, either by public submission or through an appropriate protective order, depending on which is more appropriate. The Court should then order the Government to submit to APA discovery.

Dated: June 10, 2021                    Respectfully submitted,

                                        CAIR LEGAL DEFENSE FUND
                                        BY: /s/ Lena Masri
                                        Lena F. Masri (VA 93291)
                                        lmasri@cair.com
                                        Gadeir I. Abbas (VA 81161)*
                                        gabbas@cair.com
                                        Justin M. Sadowsky (VA 73382)
                                        jsadowsky@cair.com

                                        453 New Jersey Ave., S.E.
                                        Washington, DC 20003
                                        Phone: (202) 742-6420
                                        Fax: (202) 488-0833

                                        *Practice limited to federal matters.
                                        Attorney for Plaintiffs

---

[6] DHS Homeland Threat Assessment, October 2020, at 18, *available at* https://www.dhs.gov/sites/default/files/publications/2020_10_06_homeland-threat-assessment.pdf.