UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ADIS KOVAC; BASHAR ALJAME; ABRAHAM SBYTI; SUHAIB ALLABABIDI; and FADUMO WARSAME,<br><br>*Plaintiffs,*<br><br>v.<br><br>CHRISTOPHER WRAY; CHARLES H KABLE; DEBORAH MOORE; NICHOLAS RASMUSSEN; DAVID P PEKOSKE; and KEVIN K MCALEENAN,<br><br>*Defendants.* | Civil Action No. 3:18-CV-00110-X |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Government's motion for leave to file portions of the Administrative Record under seal and for *ex parte*, *in camera* review only [Doc. No. 67] and the plaintiffs' motion for limited discovery [Doc No. 73]. After reviewing the *ex parte* Administrative Record, and for the reasons explained below, the Court **GRANTS** the Government's motion for leave and **GRANTS IN PART** the plaintiffs' motion for limited Administrative Procedure Act discovery.

### I.     Motion to Seal

The Government contends that portions of the Administrative Record are protected from disclosure by various sources of statutory and common law. Specifically, the Government claims that portions of the Administrative Record

1

contain classified national security information, sensitive law enforcement information, and information designated by the Transportation Security Administration as Sensitive Security Information pursuant to 49 U.S.C. § 114(r). It claims that the information contained in the *ex parte* Administrative Record cannot be filed without harm to the Government's national security and law enforcement interests and therefore moves to file the Administrative Record under seal and for *ex parte* review only.

### A. Legal Standards

The existing protective order requires any party seeking to file documents under seal to "brief the legal authorities indicating the risks of disclosure outweigh the public's right to know, and . . . explain that no other viable alternative to sealing exists."[1] The protective order also requires the facts in this motion to be verified by a declaration from someone with personal knowledge,[2] which will assist the Court in making fact findings that can withstand appellate scrutiny and overcome the strong common law presumption in favor of public access.[3] There are two categories of information at issue here: classified information and law enforcement sensitive information.

---

[1] Doc. No. 72 at 5; Doc. No. 61 at 2.

[2] Doc. No. 72 at 5; Doc. No. 61 at 2–3.

[3] Doc. No. 72 at 5; Doc. No. 61 at 3; s*ee also United States v. Edwards*, 823 F.2d 111, 119 (5th Cir. 1987) ("[I]f closure of a presumptively open proceeding is to withstand a First Amendment challenge, the court must make specific fact findings that substantial probability exists that an interest of a higher value will be prejudiced and that no reasonable alternatives will adequately protect that interest.").

### B. Analysis

The plaintiffs apparently do not contest that classified information in the Administrative Record is properly submitted for *ex parte, in camera* review only. They do not refute the Government's arguments on this point and instead focus their argument on the sensitive law enforcement information.[4] The Court agrees with the Government that the classified documents should be sealed and are properly submitted for *ex parte, in camera* review only.[5] Therefore the Court **GRANTS** the motion as to the classified material in the Administrative Record.

As to the law enforcement sensitive information, courts have recognized the importance of protecting information that, although not classified, would harm national security if made public.[6] In determining whether the law enforcement privilege applies, "the court must balance the government's interest in confidentiality against the litigant's need for the documents."[7] To properly balance the competing interests, the Court must apply the *Frankenhauser* factors.[8] However, the Court has

---

[4] *See* Doc. No. 73 at 9–10 distinguishing cases on grounds that the documents were classified.

[5] *See generally Dep't of Navy v. Egan*, 484 U.S. 518, 529 (1988) ("[T]he protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it."); *United States v. El-Mezain*, 664 F.3d 467, 522 (5th Cir. 2011), *as revised* (Dec. 27, 2011) ("No one seriously disputes that the Government possesses an important privilege to withhold classified information, nor do we believe a contrary assertion could be sustained." (citing *United States v. Yunis*, 867 F.2d 617, 622 (D.C. Cir. 1989))); *Sullo & Bobbitt, P.L.L.C. v. Milner*, 765 F.3d 388, 392 (5th Cir. 2014) ("Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control" (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978))).

[6] *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 569 (5th Cir. 2006) ("[I]n today's times the compelled production of government documents could impact highly sensitive matters relating to national security.").

[7] *Id.* at 570 (cleaned up).

[8] *Id.* (citing *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. Mar. 13, 1973)).

"considerable leeway in weighing the different factors," [9] and may apply the test in a "flexible manner."[10] The factors are:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.[11]

The Government confirms that the Administrative Record contains two sets of materials: (1) materials that the Government considered in determining whether the plaintiffs met the standard for inclusion in the Terrorist Screening Database, and (2) materials identifying and explaining the placement and redress procedures applicable to the plaintiffs alleged Terrorist Screening Database placement. The Government states that most of the information in the second category has been filed publicly. The exceptions to this are the Watchlist Guidance and the Selectee List Standard.

The plaintiffs contend that, applying the *Frankenhauser* factors, the law enforcement privilege is overcome for both categories of information. Specifically,

---

[9] *Id.* (quoting *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988)).

[10] *Id.*

[11] *Id.*

they allege—although in a general manner—that only factors eight through ten favor disclosure. They also contend that this information should not be protected because there is no ongoing investigation. The Government has provided a thorough explanation of why the documents must be filed under seal and for *in camera* review through its declaration of Jason V. Herring, Deputy Director for Operations of the Terrorist Screening Center.[12]

As to the first category of information, the Government argues that plaintiff-specific materials cannot be disclosed for two reasons: (1) the Government cannot confirm or deny any plaintiff's status without revealing privileged information which, if released, would harm national security and (2) any underlying documents justifying the reasons for including any plaintiff on the Terrorist Screening Database (TSDB) would reflect the underlying investigative or intelligence-related interest in each plaintiff. The Government's declaration in support of its motion makes plain why the plaintiffs' status cannot be disclosed.[13] Indeed, other courts have recognized this important fact. Recently, the Fourth Circuit explained:

> [T]he government has a general policy of not disclosing TSDB status, whether positive or negative, in response to inquiries. The reason for this is apparent. Disclosure would disrupt and potentially destroy counterterrorism investigations because terrorists could alter their behavior, avoid detection, and destroy evidence. For example, if a terrorist group knew that some of its operatives were *not* in the TSDB, it could craft a plan sending those operatives through an airport or border while helping other members avoid detection. For similar reasons, the government will not publicly disclose how an individual

---

[12] *See* Doc. No. 67-1.

[13] *See id.* at 14–20.

came to be included. Doing so could alert terrorists to the tactics used by the government to detect them.[14]

The same rationale justifies not disclosing any underlying investigative information.[15]

As to the policy documents relevant to the procedural claim,[16] including placement and redress procedures applicable to any alleged watchlist or database placement, the Government states that most documents have been filed publicly, either in whole or in part, except for the Watchlisting Guidance and the Selectee List.

The plaintiffs argue that the *Frankenhauser* factors don't get to the real reason that the Government does not want to disclose each category of documents. Instead, they contend that keeping the information secret is inherent to the Government's concept of a secret, review-free, and extrajudicial watchlist. But the Herring Declaration explains that the Watchlisting Guidance "is a comprehensive manual and a 'roadmap' to one of the United States' critical national security programs in regard to protecting the homeland" and thus "it is highly sensitive and the disclosure of it would cause significant harm to law enforcement and national security interests."[17] And as the Government notes, this falls in line with protections for law

---

[14] *Elhady v. Kable*, 993 F.3d 208, 215 (4th Cir. 2021); *see also Wright v. Fed. Bureau of Investigation*, No. 3:20-CV-173-G-BN, 2020 WL 7345678, at *8 (N.D. Tex. Nov. 13, 2020) (Horan, J.), *report and recommendation adopted*, No. 3:20-CV-0173-G-BN, 2020 WL 7344707 (N.D. Tex. Dec. 14, 2020) (Fish, J); *Al-Kidd v. Gonzales*, No. CV 05-093-EJL-MHW, 2007 WL 4391029, at *8 (D. Idaho Dec. 10, 2007).

[15] *Elhady*, 993 F.3d at 215 ("For similar reasons, the government will not publicly disclose how an individual came to be included. Doing so could alert terrorists to the tactics used by the government to detect them.").

[16] The Government maintains that no procedural claim exists.

[17] Doc. No. 67-1 at 8.

enforcement information.[18] Further, even without an ongoing investigation, the law enforcement privilege can still apply if, as Herring testified to here, "the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed to the public."[19] And finally, insofar as the plaintiffs rely on the alleged guidance leaked to the Intercept in July 2014,[20] the Government has neither confirmed nor denied the authenticity of the guidance, foreclosing any argument of waiver.[21]

In light of the above, and assuming the plaintiffs' need for this information is great, the Court finds that the public interest and the sensitivity of the information weighs in favor of nondisclosure, outweighing plaintiffs' need for the information.[22] The Court has reviewed the documents in the *ex parte* Administrative Record and

---

[18] *See Cox v. DOJ*, 576 F.2d 1302, 1307 (8th Cir. 1978) (secrecy is justified if disclosure to the public would "significantly impede the [law] enforcement process," such as "when information is made available which allows persons simultaneously to violate the law and to avoid detection."); *Egan*, 484 U.S. at 527 (recognizing "the Government's 'compelling interest' in withholding national security information from unauthorized persons in the course of executive business").

[19] *In re The City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) (quoting *Nat'l Cong. for P.R. Rights ex rel. Perez v. City of N.Y.*, 194 F.R.D. 88, 95 (S.D.N.Y.2000); *see also United States v. Ketner*, 566 F. Supp. 2d 568, 580–81 (W.D. Tex. 2008) (quoting *Black v. Sheraton Corp. of Am.,* 564 F.2d 531, 546 (D.C. Cir. 1977)).

[20] The plaintiffs contend that the Watchlisting Guidance should not be sealed because the core guidance covering the watchlist was leaked to the Intercept in July 2014. They argue that the Government's argument for sealing information contained in the leaked document fails because it has already been made public. But the Government has not confirmed or denied whether the leaked document is authentic. It has also not told the plaintiffs whether the guidance has been updated since then. Because the Government is not confirming the authenticity of the document leaked to the Intercept, it should not be treated as public and should remain sealed.

[21] *See Fitzgibbon v. C.I.A.*, 911 F.2d 755, 765–66 (D.C. Cir. 1990); *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370 (4th Cir. 1975) ("The District Judge properly held that classified information obtained by the CIA or the State Department was not in the public domain unless there had been official disclosure of it.").

[22] *See Al-Kidd*, 2007 WL 4391029, at *8.

concludes that the Government has met its burden in this case and **GRANTS** the motion to seal and for *ex parte*, *in camera* review of the Administrative Record.

The plaintiffs also request that the Court require the Government to produce a privilege log. In its reply, the plaintiffs concede that the Government provided the plaintiffs a privilege log as to plaintiffs' own records. The Government has also disclosed that the only policy-related document withheld from the plaintiffs is the current Watchlisting Guidance. Therefore, the Court deems the plaintiffs' request for a privilege log moot. And for the reasons stated above, the Court similarly denies the plaintiffs' alternative request for an attorneys-eyes-only protective order.

## II. Motion for Limited Discovery

In its response to the Government's motion, the plaintiffs move for limited discovery on their remaining Administrative Procedure Act claims. The Court will construe the plaintiffs' response as a separate motion for limited Administrative Procedure Act discovery.

### A. Legal Standards

As a general rule, "[j]udicial review of agency action is . . . limited to an examination of the agency record."[23] There are limited exceptions to this general rule, but the Fifth Circuit has held that "[s]upplementation of the administrative record is not allowed unless the moving party demonstrates 'unusual circumstances

---

[23] *Baker v. Bell*, 630 F.2d 1046, 1051 (5th Cir. 1980).

justifying a departure' from the general presumption that review is limited to the record compiled by the agency."[24] The Court may order supplementation when:

> (1) the agency deliberately or negligently excluded documents that may have been adverse to its decision, . . .
>
> (2) the district court needed to supplement the record with "background information" in order to determine whether the agency considered all of the relevant factors, or
>
> (3) the agency failed to explain administrative action so as to frustrate judicial review.[25]

District courts in the Fifth Circuit have also recognized other exceptions, consistent with the three broad *Medina* categories.[26] These exceptions include:

1. When agency action is not adequately explained in the record before the court;
2. When the agency failed to consider factors which are relevant to its final decision;
3. When an agency considered evidence which it failed to include in the record;
4. When a case is so complex that a court needs more evidence to enable it to understand the issues clearly;
5. In cases where evidence arising after the agency action shows whether the decision was correct or not;
6. In cases where agencies are sued for a failure to take action;
7. In cases arising under NEPA; and
8. In cases where relief is at issue, especially at the preliminary injunction stage.[27]

---

[24] *Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010) (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)).

[25] *Id.* (alteration in original) (quoting *Am. Wildlands*, 530 F.3d at 1002).

[26] *Texas v. Biden*, No. 2:21-CV-067-Z, 2021 WL 4552547, at *2 (N.D. Tex. July 19, 2021) (Kacsmaryk, J.) ("District courts in this circuit routinely allow extra record evidence to be introduced under the following '*Davis Mountains*' circumstances.").

[27] *Id.* (cleaned up).

### B. Analysis

The plaintiffs seek in discovery "the record that was before the agency when they made the important decisions being challenged," the watchlist guidance, documents explaining how the Government came to its decisions as to developing such standards, as well as statistical information the plaintiffs believe will numerically demonstrate that the watchlist is arbitrary and capricious.

The plaintiffs focus on factors 1–4. They contend that the Administrative Record is incomplete because it does not include "a full or even adequate explanation of how the Government came to its decisions as to developing the watchlisting standards and its consequences."[28] In response, the Government confirmed that the Watchlisting Guidance is included in the Administrative Record. The Government states that the plaintiffs also "have possession of the full set of procedural documents pertaining to TSC's placement and redress procedures." However, the Government argues that it cannot provide the plaintiffs with the documents explaining how the Government developed the watchlisting standards because they are deliberative materials, excluded from the administrative record as considered by the court. The Court agrees. "[A]bsent a showing of bad faith or improper behavior,"[29] "deliberative

---

[28] Doc. No. 73 at 12.

[29] *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019).

10

materials are generally excluded from the administrative record as considered by the court."[30]

The plaintiffs also argue that the Government acted in bad faith.[31] They argue that the Administrative Record did not include the materials before the agency at all relative timeframes. But this is contradicted by the Government's certification under oath that the record contains the watchlisting procedures for the periods relevant to this action.[32] The plaintiffs' other evidence of bad faith repeats their complaints about the watchlist itself. The plaintiffs have not met their burden of proving that the Government acted in bad faith; therefore, the Court denies their request for discovery on this ground.

However, as to materials related to plaintiffs' procedural Administrative Procedure Act claim, the Government bases its argument on its assumption that only plaintiffs' substantive Administrative Procedure Act claim, and not its procedural Administrative Procedure Act claim survives. This Court has already agreed with the plaintiffs that the "Administrative Procedure Act claims and the constitutional claims are isolated, independent claims."[33] The Court also found that the plaintiffs'

---

[30] *United States v. Colliot*, No. AU-16-CA-01281-SS, 2017 WL 6348129, at *3 n.4 (W.D. Tex. Dec. 15, 2017) (citing *Tafas v. Dudas*, 530 F. Supp. 2d 786, 794–95 (E.D. Va. 2008) ("A complete administrative record . . . does not include privileged materials, such as documents that fall within the deliberative process privilege, attorney-client privilege, and work product privilege.")); *see also* S*an Luis Obispo Mothers for Peace v. NRC*, 789 F.2d 26, 44–45 (D.C. Cir. 1986) (*en banc*).

[31] The plaintiffs cite *City of Dallas v. Hall*, 07-CV-60, 2007 WL 3257188, at *5 (N.D. Tex. Oct. 29, 2007) (Solis, J.), which lists bad faith as a potential exception.

[32] Doc. No. 66-1.

[33] *Kovac v. Wray*, No. 3:18-CV-00110-X, 2020 WL 6545913, at *4 (N.D. Tex. Nov. 6, 2020) (Starr, J.).

Administrative Procedure Act claims would require further factual development.[34] The Court declines to revisit its previous ruling here. The Court recognizes that the Government has already provided materials relevant to the plaintiffs' Administrative Procedure Act claims, but to the extent that the Government has withheld materials from the Administrative Record pertaining to the plaintiffs' "procedural" Administrative Procedure Act claim, the Court **ORDERS** the Government to supplement the Administrative Record within 45 days of this Order.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** the Government's motion for leave to file portions of the administrative record under seal and for *ex parte*, *in camera* review only and **GRANTS IN PART** the plaintiffs' motion for limited Administrative Procedure Act discovery; it **ORDERS** the Government to supplement the Administrative Record within 45 days of this Order. Further, the Court **ORDERS** the parties to submit motions for summary judgment within 60 days of the date the Government supplements the Administrative Record.

**IT IS SO ORDERED** this 10th day of March, 2022.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[34] *Id.* at *5.